**John A. LEONE, Plaintiff,**

**v.**

**Dr. William D. KIMMEL, Jr., et al.,
Defendants.**

Superior Court of Delaware,
Kent.

Feb. 18, 1975.

John S. Grady, Bader, Dorsey & Kreshtool, Wilmington, for plaintiff.

James D. Griffin, Georgetown, for defendants.

OPINION

CHRISTIE, Judge.

This suit arises upon plaintiff's petition for declaratory judgment, writ of certiorari and/or appeal seeking to nullify certain actions of the defendants, who constitute the Milford School Board. Both the defendants and the plaintiff have moved for summary judgment.

Plaintiff, John A. Leone, is a teacher in the Milford School District. For five years before this case arose, he served as a teacher and also as assistant coach of the Milford High School football team. The duties that he undertook as assistant coach were in addition to his responsibilities in the classroom and were performed outside of normal school hours under a special separate contract. For these additional services, he received compensation in the amount of five hundred dollars at the end of each football season.

Each year a new supplemental contract was executed between the plaintiff and the School Board. So each year the Board decided to again appoint the plaintiff as assistant coach and specified the compensation. The last such contract was entered into on August 15, 1972. Upon completion of the 1972 football season the plaintiff was paid for his services in accordance with the contract.

Plaintiff also had a "Professional Employee Contract." This contract was dated June 1, 1972, and covered those services rendered by the plaintiff as a regular certified teacher during school sessions. This contract is not involved in the dispute before the Court.

The defendant School Board held an informal meeting December 5, 1972, at which time it voted not to offer new coaching contracts for 1973 to the coach and assistant coach, the plaintiff herein. The next day, the coaches were informed of the Board's decision and were urged to resign. Each of them refused to do so.

Thereafter, a formal meeting of the Board was held December 11, 1972. Although no written notice of the meeting was given the coaches, they requested the right to be present. That right was granted and they were present. Upon conclusion of the regular Board meeting, the School Board went into executive session for the purpose of discussing personnel matters. The Board then discussed the coaching situation, and the coaches were given a chance to make a presentation to the Board. Thereafter, a vote was taken by secret ballot, and the Board formally decided not to award contracts to the coaches for the 1973 football season.

Both coaches brought suit in this court seeking to nullify the Board's action.

In a separate action in the Delaware Court of Chancery, the coaches filed suit seeking an injunction prohibiting the defendants from hiring any persons other than themselves to coach the Milford High football team during the 1973 season. Vice-Chancellor William Marvel, in a decision dated April 5, 1973, denied injunctive relief. The Court held that the provisions of 14 Del.C. § 1401 et seq., which sets out procedural and hearing requirements which must be met to properly terminate the employment of a public school teacher, were not applicable to the separate contracts for coaching athletic teams. He noted that:

> "14 Del.C. § 1401, defines teachers as '* * * all persons certified to teach who are employed by the Board as a teacher.' A person '* * * certified to teach * * *' is one who must meet certain express standards, 14 Del.C. §§ 1201–1204, and who receives prescribed minimum pay, 14 Del.C. § 1305. Such statutes, however do not require the certification of an athletic coach, nor are State funds allocated to the maintenance of public school athletic programs."

The Vice-Chancellor further held that the coaches did not have "any semblance of a valid claim to tenure . . . in their former football coaching jobs. . . . "

He noted that where a person has not acquired a vested interest in specific benefits, there is no applicable procedural due process requirement, citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 548 (1972). His decision is determinative of the issues to which he addressed himself. As to coaching positions, it is established that no hearings are required under Delaware statutory law and none are required by the Constitution in connection with the awarding of contracts for extracurricular football coaching.

The coaches then petitioned the Superior Court for leave to amend the complaint to raise the new issue of whether they were entitled to the protection of the grievance procedure provisions contained in the Professional Negotiation Agreement entered into between the Board and the bargaining unit representing the teachers of the Milford School District. Judge Taylor, in a letter opinion dated August 9, 1973, granted leave to so amend the complaint. He also held at that time that the plaintiff's argument that the December 11, 1973, Board meeting amounted to a self-imposed hearing and, therefore, was required to meet the specific hearing standards was without merit.

At this point in the proceedings, the former football coach withdrew as a plaintiff leaving only the former assistant coach as a plaintiff.

The Professional Negotiation Agreement was entered into December 21, 1972. Among the provisions which might be pertinent to the instant case are the following:

## ARTICLE I

## RECOGNITION

"A. The Board hereby recognizes the Association as the exclusive and sole representative for collective negotiations concerning terms and conditions of employment for all regularly employed personnel under contract: classroom teachers, guidance counselors, school nurses, librarians, visiting teachers, psychologists, and other professional personnel who do not fill administrative or supervisory positions; but excluding: cafeteria employees, custodians, maintenance personnel, clerical staff, teacher aides, and bus drivers.

B. Unless otherwise indicated, the term 'Teachers,' when used hereinafter in this Agreement, shall refer to all professional employees represented . . .

\*　\*　\*　\*　\*　\*

## ARTICLE IV

## TEACHERS RIGHTS

\*　\*　\*　\*　\*　\*

B. Nothing contained herein shall be construed to deny or restrict to any teacher such rights as he may have under Delaware School Laws or other applicable laws and policies of the local Board and State Board of Education. The rights granted to teachers hereunder shall be deemed to be in addition to those provided elsewhere.

C. No teacher shall be disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage without just cause. Any such action asserted by the Board . . . shall be subject to the grievance procedure herein set forth."

The crucial issue for determination is whether the plaintiff, in his capacity as an assistant football coach, was covered by the Agreement.

Article VI, entitled "GRIEVANCE PROCEDURE" defines a grievance covered by the Agreement (in Section A) as "a claim by the teacher based upon the professed violation of this Agreement or established school Board policies that result in a personal loss . . ."

The plaintiffs have not presented any evidence indicating that the School Board had an established policy which required

that any specific procedural steps be taken in regard to the annual awarding of contracts for special services. Since no established Board policies have been shown to have been infringed upon, the coaches cannot claim the protection of the Agreement unless the Agreement found general application to their coaching contracts.

I am of the opinion that contracts covering coaching duties were not covered by the Professional Negotiation Agreement.

First, almost all the duties pertinent to coaching were performed outside of normal school hours. Article VII entitled "TEACHING HOURS AND TEACHING LOAD" specifically requires that the work day for all teachers assigned to high schools "shall not exceed seven hours and thirty minutes for each full school day" except in emergency situations. While the same section provides that teachers may voluntarily assume another schedule arrangement without violating the Agreement, this is not to say that additional responsibilities, such as those here involved, will be covered by the Professional Negotiation Agreement.

■ Second, Article I provides that "all regularly employed personnel under contract: classroom teachers, . . . and other professional personnel . . ." are represented and thereby implicitly covered by the Agreement. Vice-Chancellor Marvel has already determined that a football coach, while acting as such, is not acting as a "teacher" under Delaware statutory law. I find the word "teacher" under the Delaware statutes to be parallel in meaning to the words "classroom teacher" as used in the Agreement. It is clear that the additional duties undertaken by athletic coaches are not an integral part of classroom instruction for which a teacher is duly certified and as to which the teacher has special and unique procedural rights.

A further ramification of the problem is posed by the provision of the Agreement which extends coverage of the Agreement to those "regularly employed . . . in a professional capacity." In this connection, it could be said that football coaches in general and high school football coaches in particular are not "regularly employed" —here, they were chosen for one season at a time and their contract so provided.

Furthermore, it is doubtful that an assistant high school football coach is a professional person while acting in that capacity within the meaning of "professional" as it is used in the Professional Negotiation Agreement. At best, this work is a form of avocation as to which there are no formal qualification requirements. No professional license or prescribed course of training is required by state statute.

■ The failure to grant a new contract for coaching to the plaintiff is not, in my opinion, a matter within the coverage of the Professional Negotiation Agreement. The conclusion here reached under the terms of the Professional Negotiation Agreement seems to be in accord with long-established custom which traditionally allows much more flexibility in the selection of coaches than would be allowed in the hiring and firing of teachers. If coaches could not be relieved of their duties at the end of their contract period without specific charges and a formal public hearing or other special formalities usually afforded in connection with teaching contracts, a new and very interesting field of contract law might develop. However, I am of the opinion that the Professional Negotiation Agreement was not designed to open up this new field and that it imposed no restrictions on the selection of extra-curricular athletic coaches for a new season after existing contracts had been completed.

Summary judgment for the defendants is entered. It is so ordered.