**310**

BOARD OF EDUCATION OF LOUIS-
VILLE, Kentucky, etc., Appellant,

v.

LOUISVILLE EDUCATION ASSOCIA-
TION et al., Appellees.

Court of Appeals of Kentucky.

Sept. 30, 1977.

As Modified on Denial of Rehearing
Feb. 10, 1978.

Henry A. Triplett, Hogan, Taylor, Denzer
& Bennett, Dan C. McCubbin, Louisville,
for appellant.

John Frith Stewart, Walter Lapp Sales,
Louisville, for appellees.

Before COOPER, HOWERTON and
REYNOLDS, JJ.

REYNOLDS, Judge.

The Board of Education of Louisville,
Kentucky appeals from a judgment of Jef-
ferson Circuit Court which reinstated two
non-tenured teachers with an award of
back pay.

In February 1974 the appellee, Louisville
Education Association (identified as L.E.A.)
and the appellant, Louisville Board of Edu-
cation (identified as the Board), entered
into a Professional Agreement pertaining to
wages, hours and working conditions of cer-
tificated teachers employed in the system.
Appellees Selker and Reese, non-tenured,
certificated teachers, were employed for the
first time by the Board and awarded teach-
ing contracts for the 1973–1974 school year.
Appellees' performances were determined
to be unsatisfactory. The Board, following
the statutory procedure of KRS 161.750(2),
voted not to re-employ and gave statutory
notice to the appellees.

Appellees, plaintiffs below, maintained in
their complaint that the Board's decision of
non-re-employment was a "grievance" and
that the Board failed to utilize the five-step
grievance procedure set forth in the con-
tract between the parties, and the appellant
asserts that the trial court erred in its judg-
ment upon this issue.

We find, as to this sole issue, that the
contract (Professional Agreement) defines a
grievance as follows:

Grievance is a claim based upon an
event or condition which affects the wel-
fare and/or conditions of employment of
a certificated person covered under the
terms of this agreement or a group of
certificated persons covered under the
terms of this agreement and/or the inter-
pretations, meaning, or application of any
of the provisions of this agreement or any

subsequent agreement entered into pursuant to this agreement.

We find the definition of grievance as outlined in the Professional Agreement to be so generalized as to mean all things to all people. The case of *Pinto v. Wynstra*, 43 Misc.2d 363, 250 N.Y.S.2d 1012 (1964) held that a non-tenured teacher, whose services were terminated, did not have a grievance within the meaning of the statute providing for settlement of differences between teachers and their employer through procedures under which employees might present grievances. The statutory definition of grievance therein was broad in its scope of coverage but did contain language that the term grievance did not include, among other things, any matter which is otherwise reviewable pursuant to law or any rule or regulation having the force and effect of law. The Professional Agreement provides:

> Under Kentucky law the Board shall have and exercise the exclusive control of the public schools within the Louisville School District. This Agreement in no way attempts to alter or diminish such statutory authority.

■ KRS 161.750, which directs itself to teachers' limited contracts, utilizes the terms, "re-employ" and "not to re-employ." From this record it is evident that the Board adhered to the requirements set forth in the statute and determined not to re-employ Selker and Reese. From the contract we are unable to find a specific provision requiring the Board to follow the five-step grievance procedure in a case of this specific nature where the Board voted "not to re-employ" the appellees. Were we to adopt even the most liberal construction of the term "grievance", we would be constrained to alter the statutory steps imposed upon the Board by KRS 161.750, by further requiring it to take the additional steps set forth in the Professional Agreement. In the case of *Ex Parte Woo Jan*, 228 F. 927, 941 (E.D.Ky., 1916), the court stated that the word "alter" was broad enough to cover a mere addition and said that a thing is made different from what it was when nothing more is done than to add something to it. Also, see 3 Words and Phrases "*Alter*", p. 400.

■ *Gillan v. Board of Regents of Normal Schools*, 88 Wis. 7, 58 N.W. 1042 (1894) stands for the proposition that the right of dismissal given to a board is absolute and cannot be limited by contract. There is neither an infringement or issue of constitutional guaranty in this action. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Additionally, cause is not required for denial of re-employment under a limited contract. *Johnson v. Dixon*, Ky., 501 S.W.2d 256 (1973). The sole issue, arising from the facts in this case, does not constitute a grievance.

The judgment of the trial court is reversed, and the court is directed to enter summary judgment for the appellants, dismissing the appellees' complaint and amended complaints.

COOPER, J., concurs.

HOWERTON, J., dissents.

HOWERTON, Judge, dissenting.

I must respectfully dissent. I believe the majority has failed to properly recognize the contract between the Board of Education and the Teachers Association, and to the extent the contract has been recognized, it has been interpreted too narrowly.

The basic question, however, is whether the grievance procedure in the contract (Professional Agreement) applies to the termination or non-renewal of a non-tenured certificated teacher holding a limited employment contract. The majority concluded that it does not. I disagree.

The definition of a "grievance" contained in the Professional Agreement reads:

> Grievance is a claim based upon an event or condition which affects the welfare . . . of a certificated person . . .

This may be a broad definition, but that fact does not invalidate it. Under the definition, a "gripe" might be a grievance. If

an employee believes he has a complaint, he might well have what would constitute a grievance. We need not decide everything that might or might not be a grievance, but I must conclude that if one is not aggrieved by losing his job, he will never have a grievance. Also, it should be noted that Subsection E, "Miscellaneous", relates to re-instatement and backpay for grievance proceedings involving loss of pay and terminations of contracts. This is a clear indication that the parties intended to include terminations of certificated teachers within the meaning of a "grievance". The individual appellees were "certificated", but they were not tenured.

Even the Board of Education did not contend that the non-renewal of a limited contract teacher did not come within the meaning of a "grievance". The Board processed the grievance through the first two steps, and then it unilaterally determined that the procedure infringed upon its power not to renew a teacher's contract under KRS 161.750.

In considering the infringement question, the majority quoted the following passage from the contract:

Under Kentucky law, the Board shall have and exercise the exclusive control of the public schools within the Louisville School District. This agreement in no way attempts to alter or diminish such statutory authority.

The statement is taken out of context from what would be called the "Management Rights" section of the Agreement. Such a provision merely means that the School Board shall manage the System, and that it is not giving up control of the public schools to others. The Board may certainly determine the size of the work force, the locations of the schools, the budget, qualifications for employment, and on and on; but, the one phrase does not eliminate the benefits and provisions for job security granted to the teachers in the remainder of the Agreement. The grievance procedure was agreed to as a fair and peaceful way to settle individual or group disputes.

The Board agreed to the terms and definitions within the contract, a termination is clearly grounds for a grievance, and unless the grievance procedure is unlawful and unenforceable, it is binding on the School Board.

The majority concluded that the grievance procedure altered the terms of KRS 161.750 which provides for re-employment or non-re-employment of limited contract teachers. There is no question but that the Board correctly followed KRS 161.750 in not re-employing Selker and Reese, but the statute does not prohibit compliance with a grievance procedure after determining not to re-employ a teacher. KRS 161.750 is not a prohibitory statute. It merely provides minimum standards for notification of non-renewal.

The two parties may need to consider the effect of a grievance procedure at the next contract time, and if the procedures are to be continued, the Board should take into account the amount of time required to process grievances resulting from terminations.

The majority relied on an 1894 case, *Gillan v. Board of Regents of Normal Schools*, 88 Wis. 7, 58 N.W. 1042, which made dismissals an absolute right of a board which could not be limited by contract. *Gillan, Id.*, was undoubtedly a good decision in 1894, but it is so removed from the facts of life today that it simply must not be authority for a teacher-school board contract in Kentucky in 1974.

Kentucky courts have consistently held that a Board of Education is bound by the terms of its contracts. Statutory authority also recognizes the power of a Board to enter into contracts. KRS 160.160, KRS 160.290, and *Hogan v. Glasscock*, Ky., 324 S.W.2d 815 (1959). The adoption of a grievance procedure was also specifically approved in *International Brotherhood of Firemen and Oilers v. Board of Education*, Ky., 393 S.W.2d 793 (1965).

The grievance of a non-renewal does not take away the Board's power under KRS 161.750 to decide whether or not to renew a contract. It does, however, provide an opportunity for review of the decision.

I cannot say what the outcome of the non-renewal of Selker and Reese would have been, if the grievance procedures had been followed, although they probably would have remained terminated. However, I do conclude that the contract was negotiated in good faith, the Board had the power to contract, the non-renewal constituted a legitimate grievance within the agreed definition, and the grievance procedure does not unlawfully take away any statutory power which must be absolutely vested in the Board.

For the foregoing reasons, I dissent.