ALBERT LEA EDUCATION ASSOCIA-
TION, et al., Appellants,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 241, Respondent.

No. 49175.

Supreme Court of Minnesota.

Aug. 10, 1979.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Eric R. Miller, and Edward M. Laine, St. Paul, for appellants.

Peterson, Popovich, Knutson & Flynn and Joseph E. Flynn, St. Paul, for respondent.

Heard before PETERSON, KELLY, and MAXWELL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiffs, Paul Ehrhard and the Albert Lea Education Association (ALEA), appeal from a judgment of the district court denying their request to compel grievance arbitration. The grievance arose out of the dismissal of Ehrhard, by Independent School District No. 241 (school district), from his position as head wrestling coach of the Albert Lea Senior High School. The central issue raised is whether plaintiffs alleged an arbitrable grievance under the master contract between ALEA and the school district. We hold, in agreement with the trial court, that plaintiffs failed to allege an arbitrable grievance.

Plaintiff Paul Ehrhard is a tenured secondary school teacher employed by the school district. He is, in addition, state-certified for coaching and was employed as the head wrestling coach of Albert Lea Senior High School from 1957 through 1977. During his 20 years as wrestling coach, Ehrhard's teams won numerous championships and, in 1972, Ehrhard was named Minnesota State High School "Wrestling Coach of the Year."

On December 17, 1976, Ehrhard was involved in an incident where he allegedly grabbed the neck and throat of a young wrestler who wished to quit the team. Two days after the incident, Ehrhard met with the wrestler and his parents to resolve any hard feelings arising out of the incident. The parents subsequently called the school superintendent and board of education members to request that the matter be dropped.

Notwithstanding the resolution of the incident between the parties directly involved, Ehrhard was later summoned to the office of the superintendent for a meeting with the superintendent, the senior high principal, and the athletic director. Ehrhard was interrogated, and his coaching methods were criticized. On December 28, 1976, Ehrhard received a written reprimand for using "unprovoked discipline" on a member of the wrestling team, and a copy was placed in his personnel file. On March 9, 1977, Superintendent Curtis McCamy informed Ehrhard by letter that he would be relieved of his duties as senior high wrestling coach, effective at the end of the 1976–77 school year. On March 15, 1977, at a special meeting of the school board convened to consider the school administration's recommendation not to renew Ehrhard's assignment as wrestling coach, the board voted unanimously to accept the administration's recommendation. By letter of March 21, 1977, McCamy informed Ehrhard that the reason for Ehrhard's nonrenewal as wrestling coach was that he and the board felt it was in the best interests of the sport of wrestling and the school to make a change.

By identical letters dated March 23, 1977, and March 29, 1977, ALEA and Ehrhard filed statements of grievance with Superintendent McCamy. The school district replied to the statements of grievance by letters from the superintendent and the chairman of the board of education, which stated that there was no basis for the grievance. Ehrhard and ALEA thereafter processed the grievance in accordance with procedures established under the master contract. Ehrhard and ALEA were unable to resolve the dispute with the school district pursuant to the grievance and appeal provisions of the master contract, and arbitration was demanded. The school district refused to submit the grievance to arbitration.

Ehrhard and ALEA brought an action in district court to compel arbitration. The district court concluded that the termination of Ehrhard's wrestling coach assignment did not entitle him to utilize grievance procedures established in the master contract for "teachers." An examination of the master contract, the individual teacher's continuing contract, and the letter of assignment assigning Ehrhard to the position of head wrestling coach for the 1976–77 school year, confirms the correctness of the trial court's decision that the grievance was not arbitrable.

■ Article XIV, § 1, of the master contract [1] defines "grievance" as a dispute or disagreement regarding "terms and conditions of employment." Article XIV, § 8, provides for arbitration "[i]n the event that the teacher and/or the Association and the school district are unable to resolve any grievance involving the interpretation or application of terms and conditions of employment insofar as such matters are *contained in this Contract*." (Italics supplied.) The master contract contains no provision which makes coaching one of the "terms and conditions of employment."

Article IX, § 3, subd. 1, provides: "Extra assignments associated with additional compensation shall not be construed to be part of the continuing contract unless expressly so provided in the individual contract." [2] This provision establishes that a coach does not have tenure unless his individual teach-

---

1. The master contract is incorporated as a part of each individual teacher's contract.

2. The "individual contract" appears to be, in part, an embodiment of the "continuing contract" granted by statute. Minn.St. 125.12,

subd. 4, provides that "[a] teacher who has completed his probationary period in any school district * * * shall have a continuing contract with such district."

er contract expressly provides that the coaching appointment is a part of the statutory continuing contract. This provision in no way expresses an intention that a coaching assignment is a term or condition of the master contract, such that a coach who has not had his assignment renewed may have a grievance submitted to arbitration.

Ehrhard's individual contract contains a provision that "[a]dditional services, if any, shall be assigned by Letter of Assignment by the School Board, or its designated representative, indicating additional salary * * *. Such additional assignments shall not be a part of the teacher's continuing contract under Minnesota Statutes 125.12 unless so indicated on the Letter of Assignment." This provision basically repeats the extra assignments provision contained in the master contract, but instead of specifying whether an additional assignment is a part of the continuing contract, it directs the reader to the letter of assignment.

Ehrhard's letter of assignment provides that "[t]his agreement is a part of your contract dated October 14, 1975, to which this agreement is attached and of which it is made a part for the school year 1976–77." Plaintiff Ehrhard's coaching assignment was thus expressly limited to the 1976–77 school year. The refusal of the school board to rehire him for the 1977–78 school year was, therefore, within the board's discretion, since the letter of assignment did not make the coaching position a part of Ehrhard's tenured continuing contract under § 125.12.[3] Cf., *Stang v. Independent Sch. Dist. No. 191*, 256 N.W.2d 82 (Minn. 1977); *Chiodo v. Board of Educ. of Special School Dist. No. 1*, 298 Minn. 380, 215 N.W.2d 806 (1974), which held that "coaches" were not "teachers" under the teacher tenure law (Minn.St.1976, §§ 125.12 and 125.17).

Consequently, neither the master contract nor the individual teacher contract and letter of assignment pursuant to the master contract contains any provision that can be reasonably construed to make the nonrenewal of a coaching assignment a "term and condition of employment" and thus a subject for grievance arbitration. Plaintiffs' grievance is more in the nature of a dispute or disagreement as to "rules, regulations, policies or past practices which are not within the provisions of this Contract." As to such grievances, Article XIV, § 1, of the master contract states that "[t]he decision of the Board * * * shall be final and neither the teacher nor the Association shall be entitled to process such grievance under the arbitration provisions of this Article."

Plaintiffs argue, however, that the standard applied by the district court in concluding that the grievance was not arbitrable was too strict. The standards for determining arbitrability were clearly set out in *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972), as follows:

" * * * (1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b])."

See, also, *State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977); *Layne-Minnesota Co. v. Regents of University*, 266 Minn. 284, 123 N.W.2d 371 (1963). Plaintiffs argue that the mere presence of the provisions relating

---

**3.** It is of interest that subsequent to the determination of this case in the district court, the legislature enacted Minn.St.1978, § 125.121, which grants coaches a right to notice and hearing prior to termination, but continues to give boards of education complete discretion to terminate for any reason.

to additional assignments and additional compensation makes it "reasonably debatable" that the termination of a coaching assignment is a term and condition of the master contract. While plaintiffs' argument has some superficial appeal, such a construction of "reasonably debatable" would make any provision even peripherally mentioned in a contract the subject of arbitration. The provision in the master contract dealing with additional assignments is an expression of limitation. It states that extra assignments are not subject to tenure protection absent an express provision that the assignment is a part of the continuing contract. The "reasonably debatable" standard would have no limit if plaintiffs are allowed to take a provision that denies any right to continued employment unless a specific provision granting that right is added and utilize it to successfully contend that a nonrenewed employee is entitled to dispute the nonrenewal.

■ Plaintiffs' additional arguments that the grievance is arbitrable are without merit. The reprimand of Ehrhard was not an "evaluation" under Article XV of the master contract, which deals with formal teaching evaluations, and even if it was an evaluation under the master contract, Ehrhard waived his grievance by not filing a timely notice of grievance. Ehrhard cannot convert his timely notice of grievance about his termination into a timely notice of grievance about his reprimand.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.