Greater Johnstown Area Vocational-Technical School, Appellant *v.* Greater Johnstown Area Vocational-Technical Education Association, Appellee.

Re: Gary Gallo and Sandra Pagano.

Argued November 20, 1980, before Judges MENCER, ROGERS and PALLADINO, sitting as a panel of three.

*Marlin B. Stephens*, for appellant.

*William K. Eckel*, for appellee.

OPINION BY JUDGE MENCER, March 2, 1981:

The Greater Johnstown Area Vocational-Technical School (School) has appealed from an order of the Court of Common Pleas of Cambria County, which affirmed an arbitrator's decision sustaining a grievance filed by Gary Gallo[1] and Sandra Pagano (teachers). We reverse.

The teachers, professional employees of the School, had executed separate, 1-year supplemental contracts with the School, due to expire on June 30, 1979, in which the teachers agreed to act as Student Congress Advisors. The Congress is an extracurricular organization of students established to accomplish civic projects and other activities designed for school improvement.

At its regular meeting on June 26, 1979, the Joint Operating Committee of the School decided not to renew the contracts of the teachers as Student Congress Advisors. The teachers, alleging that the action of nonrenewal was a punishment or reprimand without just cause, filed a grievance under the collective bargaining agreement. The arbitrator sustained the grievance and ordered reinstatement with back pay. The lower court affirmed, and this appeal followed.

The pertinent provisions of the collective bargaining agreement are as follows:

## ARTICLE I—RECOGNITION

The Joint Operating Committee does hereby recognize the Association as the exclusive and sole representative for collective bargaining for

---

[1] Gary Gallo has since resigned his position and is no longer a party to this controversy.

all Professional employees included in the bargaining unit. . . . The use of the terms, 'employee' or 'employes', in this Agreement, shall refer only to Professional employes within the bargaining unit. . . .

. . . .

## ARTICLE IV—GRIEVANCE PROCEDURE

## DEFINITIONS

A. A 'Grievance' is any alleged violation of this agreement or any dispute with respect to its meaning, interpretation or application.

B. An 'Aggrieved Party' is the Professional Employe or group of Professional Employes who submit a grievance or on whose behalf it is submitted and (when it submits a grievance) the Joint Operating Committee.

. . . .

## ARTICLE XVII—JUST CAUSE

No Professional employee shall be discharged, disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause.

The crucial issue for determination is whether the teachers, in their capacities as Student Congress Advisors, are covered by the collective bargaining agreement, such that the nonrenewal of their supplemental contracts raises an arbitrable issue subject to the grievance procedures established in the collective bargaining agreement. Although there is some authority to the contrary,[2] we believe that the supplemental contracts are beyond the purview of the collective bargaining agreement and that, therefore, the arbitrator

---

[2] *Westbrook School Comm. v. Westbrook Teachers Ass'n.*, 404 A. 2d 204 (Me. 1979).

erred as a matter of law by determining that the issue was arbitrable.

We find persuasive the factually similar case of *Leone v. Kimmel*, 335 A.2d 290 (Del. Super. 1975). In *Leone*, a teacher entered into a 1-year supplemental contract as an assistant football coach. After the school board voted not to renew his contract, he filed a grievance under the "Professional Negotiation Agreement." The pertinent provisions of this agreement are virtually identical to those here in issue. Based upon these facts, the court concluded that the "failure to grant a new contract for coaching to the plaintiff is not . . . a matter within the coverage of the Professional Negotiation Agreement." *Id.* at 293.

The *Leone* court's reasoning is instructive. The court noted that almost all of the duties pertinent to coaching were performed outside of normal school hours. Here, too, the teachers' functions as Student Congress Advisors were performed after regular school hours as defined in the collective bargaining agreement.[3]

The *Leone* court further concluded that a football coach, acting as such, is not a "teacher" under Delaware law. "It is clear that the additional duties undertaken by athletic coaches are not an integral part of classroom instruction for which a teacher is duly certified and as to which the teacher has special and unique procedural rights." *Id.* at 293.

Here, too, we believe that the teachers, acting in their capacities as Student Congress Advisors, were not "professional employees" as defined by Section 1101(1) of the Public School Code of 1949, Act of

---

[3] Article VI of the agreement provides, in part: "The length of the contractual day for the Professional Employe shall be seven hours and thirty-five minutes, to run consecutively, such time to include a duty-free lunch period. Early student dismissal will be periodically effected in order to schedule regular faculty meetings."

March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1101 (1).[4] Nor were they "teaching" as that term is used in Section 1(2) of the Teacher Certification Law, Act of December 12, 1973, P.L. 397, 24 P.S. §12-1251(2).[5] Our Supreme Court has determined that, in order to be a professional employee, a person must show that he fits within one of the categories created by the Legislature. *Brentwood Borough School District Appeal,* 439 Pa. 256, 267 A.2d 848 (1970). Under the collective bargaining agreement, only professional employees may file grievances. Since Student Congress Advisors are not included within the category of "professional employees," the teachers, when acting in that capacity, are not covered by the collective bargaining agreement. *Accord, Chiodo v. Board of Education of Special School District No. 1,* 298 Minn. 380, 215 N.W. 2d 806 (1974); *Kirk v. Miller,* 83 Wash.2d 777, 522 P.2d 843 (1974).

The *Leone* court also instructed that its decision comports with "long-established custom which traditionally allows much more flexibility in the selection of coaches than would be allowed in the hiring and firing of teachers." 335 A.2d at 293.[6] Here, the ar-

---

[4] Section 1101(1) provides as follows:

> The term 'professional employe' shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

[5] 24 P.S. §12-1251 provides: " 'Teach' shall mean to engage in the practice of teaching in the public schools . . . or to provide related educational . . . services in such schools."

[6] The court added the following observation:

> If coaches could not be relieved of their duties at the end of their contract period without specific charges and a formal public hearing or other special formalities usually af-

bitrator himself recognized that the Joint Operating Committee has "wide discretion in selecting the Teachers who will be appointed to these supplemental positions." We agree. *Cf.* Section 702 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.702 ("[p]ublic employers shall not be required to bargain over matters of inherent managerial policy, which shall include . . . selection and direction of personnel") ; *Pease v. Millcreek Township School District,* 412 Pa. 378, 195 A.2d 104 (1963) (the school board has broad authority to conduct extracurricular activity).

Thus, we must conclude that the failure of the School to renew these supplemental contracts is not arbitrable under the collective bargaining agreement. This conclusion is further buttressed by the recent decision of *Albert Lea Education Association v. Independent School District No. 241,* 284 N.W.2d 1 (Minn. 1979), which determined that the nonrenewal of a high school teacher's supplemental contract as a wrestling coach was not an arbitrable grievance under the collective bargaining agreement. The court decided that the coaching assignment was not a term or condition of employment, despite the presence, in the agreement, of provisions relating to additional assignments.[7]

Order reversed.

---

forded in connection with teaching contracts, a new and very interesting field of contract law might develop. However, I am of the opinion that the Professional Negotiation Agreement was not designed to open up this new field and that it imposed no restrictions on the selection of extracurricular athletic coaches for a new season after existing contracts had been completed.

335 A.2d at 293.

[7] In an analogous setting, several jurisdictions have concluded that the failure to renew a nontenured or probationary teacher's contract is not arbitrable under the collective bargaining agreement. *See, e.g., Bd. of Educ. of Louisville v. Louisville Educ. Ass'n,* 574

## Order

Now, this 2nd day of March, 1981, the order of the Court of Common Pleas of Cambria County in the above captioned case, dated March 13, 1980, affirming the award of an arbitrator, is hereby reversed.

S.W.2d 310 (Ky. App. 1977) ; *Brown v. Holton Pub. Schools*, 401 Mich. 398, 258 N.W.2d 51 (1977) ; *Wibaux Educ. Ass'n. v. Wibaux County High School*, 573 P.2d 1162 (Mont. 1978) ; *Kepp v. Springville-Griffith Inst. Cent. School Dist.*, 55 App. Div. 2d 1033, 391 N.Y.S.2d 774, *aff'd*, 43 N.Y.2d 767, 401 N.Y.S.2d 1013, 372 N.E.2d 801 (1977); *Ostrer v. Pine-Eagle School Dist. No. 61*, 40 Or. App. 265, 594 P.2d 1296 (1979). *But see Kaleva-Norman-Dickson School Dist. No. 6 v. Kaleva-Norman-Dickson School Teachers' Ass'n.*, 393 Mich. 583, 227 N.W.2d 500 (1975).