Ringgold School District, Appellant *v.* Charles J. Abramski, Appellee.

Argued November 19, 1980, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

34

*George B. Stegenga,* for appellant.

*Shelley W. Elovitz,* with her *Ronald N. Watzman,* for appellee.

Opinion by Judge MacPhail, February 20, 1981:

Ringgold School District (Appellant) appeals from a judgment entered on a verdict[1] by the Court of Common Pleas of Washington County in favor of Charles J. Abramski (Appellee). For the reasons which follow, we affirm.

The controversy in this case centers around the validity of a contract entered into by the Board of Education (Board) of the Appellant and the Appellee on November 14, 1973. The contract provides for the employment of the Appellee as head football coach of the Ringgold High School for the school years 1974-75, 1975-76 and 1976-77 at an annual salary of $2200. It is undisputed that Appellee served as head coach during the 1974-75 school year season. On January 9, 1975, however, the Board approved a motion that the coaching position "be declared open." Appel-

---

[1] At the time argument was heard, no judgment had been entered on the verdict. Pursuant to a preliminary order of this Court, that defect has been remedied by the filing of a supplemental record.

lee was notified of the Board's action on January 10, 1975 and was informed that applications for the position were being accepted. After submitting his application Appellee was appointed, by approval of the Board on May 13, 1975, to be head football coach for the 1975-76 school year. On June 3, 1975 the Board sent Appellee a letter containing eleven "stipulations" which apparently were to govern his conduct as head coach during the 1975-76 school year. Appellee agreed to the stipulations by affixing his signature to the letter and returning it to the Board. The letter included a statement that, "Violation of any of the following [stipulations] will result in the immediate termination of this contract. . . ." It is undisputed that Appellee did serve as head coach during the 1975-76 school year season. On January 8, 1976, the Board approved a motion appointing another teacher to be head football coach for the 1976-77 school year.

Appellee filed a complaint in assumpsit with the court below on or about January 7, 1977 alleging that the Appellant breached the employment contract entered into on November 14, 1973 by failing to pay Appellee as head coach for the 1976-77 school year. After a non-jury trial, the court below rendered its verdict for Appellee in the amount of $2200[2] with interest from June 30, 1976. Appellant's exceptions to the opinion and verdict were dismissed and the present appeal was taken.

The issues presented for our consideration are: 1) was the contract entered into by the Board and Appellee in November, 1973 inconsistent with the collective bargaining agreement then in effect; 2) was the November, 1973 contract rendered invalid because an unfair labor practice charge was filed in relation

---

[2] The verdict of $2200 plus interest represents the damages alleged by Appellee.

thereto; 3) is compulsory arbitration Appellee's exclusive remedy; 4) did a novation occur thereby extinguishing the three year employment contract when Appellee signed the letter of June 3, 1975; and 5) was Appellant justified in terminating Appellee's employment as head coach due to his breach of the June 3, 1975 agreement.

Appellant's first argument is that Appellee could not enter into an individual contract with the Board which extended beyond the expiration date of the collective bargaining agreement then in effect between Appellant and the Ringgold Education Association. At all times relevant to the instant case, Appellee was a member of the Ringgold Education Association. The collective bargaining agreement in effect in November, 1973 provided that individual contracts between the Board and a teacher ''shall be subject to and consistent with the terms and conditions of this Agreement. If an individual contract contains any language inconsistent with the Agreement, the Agreement *during its duration* shall be controlling.'' (Emphasis added.) That agreement expired in June, 1975. Assuming that the language quoted above applies to contracts for extracurricular positions it is clear that an individual contract with the Board is not ''inconsistent'' with the bargaining agreement simply because it was executed so as to be valid after June, 1975. To the contrary, the only limitation placed on individual contracts is that they be consistent with the bargaining agreement ''during its duration.'' We, therefore, cannot agree that the contract of November 14, 1973 was invalid because its terms extended until the 1976-77 school year.

Appellant's second argument is that the contract of November 14, 1973 was rendered invalid by the filing of an unfair labor practice charge in relation

thereto. It is undisputed that the document executed on November 14, 1973 provided that $2200 be paid per annum for the three year coaching position. It is also undisputed that compensation rates for the position of head football coach were included in the collective bargaining agreements for the years 1973-75 and 1975-77. The salaries provided by the collective bargaining agreements were different than that provided by Appellee's contract with the Board.[3] On November 29, 1973, the Ringgold Education Association filed an unfair labor practice charge with the Pennsylvania Labor Relations Board alleging, *inter alia,* that the Board had unilaterally increased the football coach's salary for the first year of his contract. The unfair labor practice charge was withdrawn on February 20, 1974, however, because the parties had reached a "mutual and satisfactory agreement." The minutes of the Board reflect that on February 14, 1974 a motion was adopted that "the *salary increase* [   ] for the head football coach . . . approved at the regular Board meeting of November 8, 1973 be rescinded. . . ." (Emphasis added.) Thus, only the salary provision in the contract was effected. The contract itself was not terminated but, instead, was brought into conformity with the collective bargaining agreement.

Appellant also argues that the contract with Appellee was "subject to" the approval of Appellant's solicitor which approval was never received. The lower court found that Appellee was not made aware that the solicitor's approval was required. Our review of the record supports that finding. The contract executed on November 14, 1973 contains no such

---

[3] The salaries provided by the bargaining agreements were: $2000 for the 1974-75 school year; $2400 for the 1975-76 school year; and $2600 for the 1976-77 school year.

condition and was not rendered invalid by the absence of the solicitor's approval. We find that the contract was validly executed and became binding upon both parties on November 14, 1973.

The third argument advanced by Appellant is that the lower court erred in denying its motion for summary judgment in the instant case because Appellee's exclusive remedy lies in arbitration pursuant to the collective bargaining agreement.[4] We disagree.

Our limited role with respect to the issue of arbitrability in the instant case is to determine whether the dispute between Appellant and Appellee *arguably* involves a violation or requires interpretation of a provision in the collective bargaining agreement.[5] *Oxford Board of School Directors v. Pennsylvania Labor Relations Board,* 31 Pa. Commonwealth Ct. 441, 376 A.2d 1012 (1977). If the issue is one arguably dealt with by the bargaining agreement then arbitration is required. *Donnellan v. Mt. Lebanon School District,* 32 Pa. Commonwealth Ct. 33, 377 A.2d 1054 (1977).

It is our opinion that the dispute here involved is not arguably covered by the collective bargaining agreement. The agreement provides that, "All extra-curricular or extra-duty positions shall be voluntary and the Board reserves the right to choose personnel

---

[4] Appellant's motion for summary judgment did not itself raise the issue of arbitrability; however, Appellant had previously raised the issue by way of new matter. Since the issue is one of jurisdiction we are compelled to now consider the merits.

[5] Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.903 mandates arbitration for disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement. The collective bargaining agreement here provides a three-step grievance procedure for those grievances which are not with-'n the scope of Section 903 of the PERA.

and position." As previously stated, the agreement also provides the compensation level for the position of football coach. The agreement is silent, however, with respect to termination of individuals holding extracurricular positions. The provision in the agreement that requires just cause for reduction in rank or compensation applies only to "professional employees."[6] Appellee's employment as head football coach, an extracurricular position, was not as a "professional employee." We conclude that the dispute here at issue is not arguably within the scope of the collective bargaining agreement. Appellee's appropriate remedy, therefore, is to sue on his individual contract with Appellant and not to pursue arbitration under the collective bargaining agreement.

Appellant's next argument is that a novation occurred, thereby extinguishing the contract of November 14, 1973, when Appellee signed the letter from the Board dated June 3, 1975 agreeing to conform his conduct as coach during the 1975-76 school year to certain stated rules. We again must disagree with Appellant's position.

The court below concluded that Appellee's original contract remained valid until the Board breached the contract in 1976 by appointing a new coach for the

[6] Section 1101(1) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1101(1) defines a "professional employee" as follows:

The term "professional employe" shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program, specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

1976-77 school year season. The court also found that the letter of June 3, 1975 did not operate to modify the original contract and did not constitute a novation.[7] The court, accordingly, found that Appellant was entitled to recover his salary for the remaining year under the three year employment contract. While we agree with the result reached by the lower court, we disagree with its legal analysis in support thereof.

It is our opinion that when the Board, on January 9, 1975, declared the position of head football coach to be "open" it breached its original contract of November 14, 1973 with Appellee. One definition of breach of contract provided by the Restatement of Contracts is the "failure, without justification, to perform all or any part of what is promised in a contract. . . ." Restatement of Contracts §314 (1932). Appellant clearly breached its promise to employ Appellee for the school years of 1975-76 and 1976-77. After the Board declared the coaching position to be "open" on January 9, 1975 it accepted numerous applications for the 1975-76 year. This action demonstrates that the Board did not consider itself to be bound by its original contract with Appellee. Al-

---

[7] We agree with the court's conclusion that no novation occurred. The requisite elements of a novation are "the displacement and extinction of a valid contract, the substitution for it of a valid new contract . . . a sufficient legal consideration for the new contract, *and the consent of the parties. . . .*" (Emphasis added.) *Yoder v. T. F. Scholes, Inc.*, 404 Pa. 242, 245, 173 A.2d 120, 121-22 (1961). *See also* 15 Williston on Contracts §1869 *et seq.* (1972). Since we have concluded, as discussed, *infra*, that the Appellant *breached* its three year contract with Appellee in January, 1975 we also conclude that the subsequent one year contract of employment did not constitute a substitution for the original conract by the consent of the parties. Thus, no novation occurred.

though Appellee was ultimately appointed on May 13, 1975 for the 1975-76 year, his appointment was not pursuant to the three year contract. We are convinced that the actions of the Board in declaring the position to be "open" constituted a breach.

Appellee's cause of action for breach of the original contract, therefore, arose on or about January 9, 1975. Appellee, however, did not immediately institute suit on his cause of action. Rather, he applied for and was appointed as head coach for the 1975-76 school year. This appointment acted to mitigate the damages occasioned by Appellant's breach of its three year contract with Appellee. When Appellant failed to appoint Appellee as head coach for the 1976-77 school year, Appellee instituted the instant suit to recover the salary to which he was entitled under his original contract for the 1976-77 school year.[8] We agree that Appellee was entitled to recover the amount of his salary for that time period and, accordingly, affirm the verdict entered by the lower court.[9]

Finally, Appellant argues that it was justified in terminating Appellee's employment after the 1975-76 year because Appellee violated the stipulations which he agreed to follow in June, 1975. We have concluded that a new and separate contract of employment was formed for the 1975-76 school year which incorporated the stipulations heretofore discussed.

---

[8] The action in assumpsit was instituted on or about January 7, 1977, within the applicable statute of limitations. See 42 Pa. C. S. §5527 (six year limitation for an action upon a contract).

[9] Although the Board took appropriate action rescinding the salary increase for the 1974-75 school year, that action did not affect the salary specified for the two years remaining on the contract. Since the Appellee sued on his original contract, he was bound by the salary terms set forth therein. Accordingly, we will affirm the judgment as entered for $2200 plus interest.

42

That one-year contract was fully performed without breach by either party. Thus, an alleged violation of the stipulations has no bearing on Appellant's failure to appoint Appellee for the following football season. An alleged violation of the stipulations also has no bearing on and provides no justification for the fact that Appellant breached its three-year contract with Appellee in January, 1975.

For the reasons stated above we affirm the judgment entered by the court below.

ORDER

AND Now, this 20th day of February, 1981, the verdict of the Court of Common Pleas of Washington County, dated June 15, 1979, is hereby affirmed.