640 A.2d 899

HARBOR CREEK SCHOOL DISTRICT, Appellee,

v.

HARBOR CREEK EDUCATION ASSOCIATION, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 20, 1993.

Decided April 26, 1994.

John J. Barber, Erie, for appellant.

Richard W. Perhacs, Knox, McLaughlin, Gornall & Sennett, Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

### OPINION OF THE COURT

FLAHERTY *, Justice.

This is an appeal, by allowance, from an order of the Commonwealth Court which reversed an order of the Court of Common Pleas of Erie County granting a motion to quash an application for vacation of an arbitration award. The motion to quash had been filed by the Harbor Creek Education Association (association), appellant herein, in an effort to prevent the Harbor Creek School District (district), appellee, from challenging an arbitration decision.

At issue is whether the district's transfer of certain duties to non-bargaining unit personnel is subject to arbitration. The factual background of the case is as follows.

The district maintains various extracurricular programs for its students, including an athletic program. The athletic program was, historically, overseen by an "athletic director." The position of athletic director was voluntary and part-time in nature, and was occupied by a full-time teacher who was a member of the bargaining unit represented by the association. As the extracurricular activities offered by the district expand-

---

* This case was reassigned to this writer.

ed through the years, there developed a need for the athletic director to assume extracurricular responsibilities exceeding the bounds of athletics. Accordingly, the district issued a revised description for the position of "athletic director." In response, the association filed a grievance challenging the new job description. An arbitrator sustained the grievance.

In 1989, the Board of School Directors (board) approved a resolution creating a new supervisory position, titled "Assistant Principal for Student and Supplemental Activities." This position included, *inter alia*, all of the duties for which the athletic director had previously been responsible. The district informed the association that the position of athletic director had been eliminated and that Willard O'Neil would be the new assistant principal. Mr. O'Neil was a full-time elementary teacher who, until that time, had served also as the athletic director. He had applied for the new position, and voluntarily left his bargaining unit to assume his new responsibilities.

The association responded by filing another grievance. This time it alleged that elimination of the position of athletic director resulted in a transfer of bargaining unit work to a non-bargaining unit employee in violation of the collective bargaining agreement. After a hearing, an arbitrator found the grievance arbitrable and sustained it on the merits. The district subsequently filed in the trial court an application to vacate the arbitration award, arguing that the subject matter of the dispute was not arbitrable and that the award should, therefore, be vacated.

The association contends that, because the collective bargaining agreement contains an appendix which lists the salary supplement to be paid to the athletic director, the position of athletic director constitutes bargaining unit work, and, hence, that disputes pertaining to the transfer of such work to non-bargaining unit employees are subject to arbitration. The association further contends that the determination of the arbitrator, as to the arbitrability of the dispute, must be upheld because of the narrow scope of review applicable to such determinations. See *Scranton Federation of Teachers, Local 1147 v. Scranton School District*, 498 Pa. 58, 65, 444

A.2d 1144, 1147 (1982) ("It is clear that the broad judicial deference given arbitrators' decisions applies with equal force to determinations regarding the arbitrability of the subject matter of a grievance.")

The district argues that grievance procedures set forth in the collective bargaining agreement are, by the express terms of the agreement, applicable only to professional employees, and that, when working as an extracurricular athletic director, Mr. O'Neil was not serving as a teacher or any other sort of professional employee. The district asserts that contractual grievance procedures do not apply when those who would otherwise be considered professional employees are engaged in extracurricular work.

The collective bargaining agreement expressly establishes that its grievance procedures exist for the benefit of professional employees. Article XXIV ("Grievance Procedures for Professional Personnel"). The professional employees in question are those who are members of the bargaining unit. The bargaining unit is defined as the unit certified by the Pennsylvania Labor Relations Board, consisting of "all full-time and regular part-time professional employees including but not limited to teachers, guidance counselors, librarians and nurses, excluding, however, all supervisors...." Article I ("Recognition").

The Commonwealth Court held that teachers who are working in extracurricular capacities are not in fact functioning as "teachers," and, thus, that they are not functioning as "professional employees" who can invoke the grievance procedures, such as arbitration, set forth in the collective bargaining agreement 146 Pa.Cmwlth. 631, 606 A.2d 666. We agree.

It is well established that parties cannot be compelled to arbitrate a dispute unless they have, by contract, agreed to arbitrate the particular issue involved. *Lincoln University v. American Association of University Professors*, 467 Pa. 112, 119, 354 A.2d 576, 580 (1976). "[W]hether or not a matter is properly within the jurisdiction of the arbitrator depends upon the intention of the parties as expressed in the

terms of the agreement." *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 540, 462 A.2d 629, 632 (1983). Clearly, too, the mere fact that parties have specified terms in a contract does not mean that they have agreed to any particular method of resolving disputes that arise from those terms.

Here, the parties agreed on a schedule of salary supplements, set forth in Appendices B and C of the collective bargaining agreement, to be paid for the performance of extracurricular work. In addition, Appendix D of the agreement provides that qualified bargaining unit members are to be given priority in filling vacancies in extracurricular positions, and that "established posting procedures will be used" to fill the vacancies.

In setting forth the grievance procedures available to professional employees, Article XXIV of the agreement defines "grievance" as "a complaint regarding the meaning, interpretation or application of *any* provision of *this* agreement." (Emphasis added). Although the present agreement describes the manner in which vacancies in extracurricular positions are to be filled, and sets the salary supplements applicable to those positions, it does not expressly address the district's power to eliminate such positions. Notwithstanding, the association contends that the present grievance concerns a provision of the collective bargaining agreement, and that it is, therefore, arbitrable.

The agreement does not address the question of whether employees performing extracurricular work are entitled to use the same grievance procedures that are available in connection with work performed in their professional capacities. Nevertheless, the agreement does state in Article VII that all after-hour assignments performed by teachers, whether paid or unpaid, except for class-related activities, are voluntary "non-teaching duties." Thus, when performing non-teaching duties, teachers are not functioning in the professional capacities that render them professional employees for purposes of the bargaining agreement.

Traditionally, the courts have regarded disputes pertaining to extracurricular work performed by teachers as non-arbitrable on the ground that such work is not professional employment covered by the collective bargaining agreement, reasoning that it is work of a non-professional nature performed under agreements that are merely supplemental to the bargaining agreement. *In re Grievance of Glover,* 137 Pa. Commw. 429, 587 A.2d 25 (1991) (teacher employed in extracurricular capacity as athletic coach), appeal denied, 528 Pa. 633, 598 A.2d 286 (1991); *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational– Technical Education Association,* 57 Pa.Commw. 195, 426 A.2d 1203 (1981) (teachers employed as advisors to an extracurricular student organization), appeal dismissed, 497 Pa. 586, 442 A.2d 692 (1982). Cf. *Moriarta v. State College Area School District,* 144 Pa.Commw. 359, 601 A.2d 872 (1992) (extracurricular athletic coach not functioning as a professional employee). This has been the result even in cases where, as here, the collective bargaining agreement sets forth salary supplements and other provisions applicable to the extracurricular work. *In re Grievance of Glover,* 137 Pa.Commw. at 431, 587 A.2d at 26; *Ringgold School District v. Abramski,* 57 Pa.Commw. 33, 39, 426 A.2d 707, 711 (1981). See also *Greater Johnstown Area Vocational–Technical School,* 57 Pa.Commw. at 200, 426 A.2d at 1205–06.

The present collective bargaining agreement contains no language that would have provided the arbitrator with a basis for deciding that the parties agreed to arbitrate disputes as to whether extracurricular duties performed by the athletic director could be assigned to non-bargaining unit personnel. Accordingly, the Commonwealth Court properly held that elimination of the position of athletic director was not subject to arbitration.

Order affirmed.

Mr. Justice LARSEN did not participate in the decision of this case.

Mr. Justice PAPADAKOS files a dissenting opinion which is joined by Mr. Justice MONTEMURO.

Mr. Justice MONTEMURO, who was an appointed justice of the court at the time of argument, participated in the decision of this case in his capacity as a senior justice.

PAPADAKOS, Justice, dissenting.

The central issue in this case is whether the underlying dispute between the parties, involving a decision by Appellee, the Harbor Creek School District, to transfer duties to non-bargaining unit personnel, is subject to resolution by arbitration. The majority holds that it was not subject to arbitration. I dissent. A full statement of the facts includes the following.

Appellant, the Harbor Creek Education Association is the Pennsylvania Labor Relations Board ("PLRB") certified exclusive representative of a collective bargaining unit comprised of certain public school employees in the Harbor Creek School District, including teachers. The part-time position of athletic director for the District had been included in the collective bargaining agreement between Appellant and Appellee for at least eighteen years, and the part-time position had always been filled by a bargaining unit member. During the seven years prior to the beginning of the 1989–1990 school year, the position was filled by Mr. William O'Neil, an elementary school teacher and a bargaining unit member. When the 1989–1990 school year commenced, the Appellee School District assigned Mr. O'Neil to the newly created position of "Assistant Principal for Student and Supplemental Activities." The new position was clearly supervisory in nature and thus the individual holding it could not continue to be a member of the bargaining unit. However, part of the job description for this new position was to "assume all the duties previously discharged by the part-time position known as athletic director." (R., p. 171a).

Viewing the School District's action to be a unilateral transfer of bargaining unit work to non-bargaining unit personnel, the Appellant Association filed a grievance which went to arbitration. At the arbitration hearing, Appellee School Dis-

trict argued that since the matter at issue concerned termination of a supplemental contract for the old position of athletic director, the grievance was not arbitrable. The Appellant Association argued that the grievance was arbitrable based upon the fact that the grievance concerned the non-negotiated removal of bargaining unit work specifically included in the parties' collective bargaining agreement.

On April 11, 1990, the arbitrator issued a decision sustaining the grievance. The Appellee School District filed an Application for Vacation of Arbitration Award before the Court of Common Pleas of Erie County. Appellant filed a motion to quash which was granted by the trial court. On appeal, the Commonwealth Court concluded that the dispute in question was not arbitrable and reversed. This Court granted allocatur because the Commonwealth Court decision appeared contrary to our decision in *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981). Amazingly, the majority ignores *Dale* and affirms.

The Commonwealth Court held the instant dispute to be non-arbitrable on the grounds that the athletic director position was a supplementary agreement and the collective bargaining agreement of the parties specifically states that it covers professional employees. In my judgment, the Commonwealth Court analysis is clearly wrong. Here, the transfer of the duties of the athletic director was in direct contradiction to specific articles of *the collective bargaining agreement itself.* Hence, the content or existence of later supplemental contracts was irrelevant to the instant dispute about arbitrability.

The collective bargaining agreement provides as follows: Article XXII:

(A) Except as this agreement shall otherwise provide, all terms and conditions of employment applicable on the signing date of this Agreement as established by the rules, regulations and/or policies of the Board in force on said date, shall continue to be so applicable during the term of this Agreement. Unless otherwise provided in the Agree-

ment, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce nor otherwise detract from any teacher benefit existing prior to its effective date. (B) All conditions of employment, teaching hours, extra compensation for duties outside teaching hours, relief period, leaves and general teaching conditions shall be maintained at not less than the highest minimum standards in effect at the time this Agreement is signed, provided that such conditions shall be improved for the benefit of teachers as required by the express provisions of this Agreement. This Agreement shall not be interpreted or applied to deprive teachers of professional advantages heretofore enjoyed unless expressly stated therein.

Article XXIII:

(B) This Agreement shall not be modified in whole or in part by the parties except by an instrument, in writing, duly executed by both parties.

The collective bargaining agreement also contains Appendix B, a schedule of coaching salaries which lists the position of athletic director, and Appendix D which is addressed to "supplemental positions," including those of "head coach/director/sponsor" of activities. The provisions of Appendix D to the collective bargaining agreement clearly state that qualified bargaining unit members have priority in selection for the supplemental positions, and that "established posting procedures will be used to fill vacancies."

Clearly, the position of athletic director is bargaining unit work. To transfer that work without an agreement between the parties explicitly violated the collective bargaining agreement.

There is a more fundamental vice to the majority's decision in the instant case however. When a matter is arguably and reasonably within the terms of the collective bargaining agreement, as here, arbitrability is for the arbitrator. As we held in *Dale, supra:*

Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement,

the validity of the arbitrator's interpretation is not a matter of concern to the court. 424 A.2d at 1312–1313.

The arbitrator's decision on arbitrability and on substance should have been upheld. By not doing so, the majority mischievously encourages endless appeals from arbitration decisions (and subtle attempts to evade collective bargaining agreements as well). That is directly contrary to an over-riding purpose of arbitration—to avoid lengthy and expensive appeals to the courts.

Hence, I dissent.

Mr. Justice MONTEMURO joins this Dissenting Opinion.