The SCHOOL DISTRICT OF
the CITY OF ERIE

v.

ERIE EDUCATION ASSOCIATION.

Erie City Education Association
and PSEA/NEA, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1999.
Decided March 31, 2000.

John P. Jones, Edinboro, for appellants.

Mark J. Kuhar, Erie, for appellee.

Before McGINLEY, J., KELLEY, J., and McCLOSKEY, Senior Judge.

KELLEY, Judge.

Erie Education Association (Association) appeals from an order of the Court of Common Pleas of Erie County (trial court) granting the School District of the City of Erie's (School District) petition for vacation of arbitration award and vacating the arbitration award at issue in this case. We reverse.

The facts are not in dispute. The School District and the Association were parties to a collective bargaining agreement governing the terms and conditions of the School District's employment of professional staff, including its teachers, with a term commencing July 1, 1995 and continuing through June 30, 2001. On July 26, 1996, the School District posted a vacancy for girls' athletic director at East High School in the City of Erie. The position was removed on August 5, 1996. The requirements for the position provided in part: "must presently be assigned as athletic director at East High School." Phillip Koval and Daniel Chojnacki, both employees of the School District, were the

sole bidders for the position. At the time of the bids, Chojnacki was employed as East High's boys' athletic director and, therefore, the only bidder who met the literal requirements of the posting. The school board appointed Chojnacki to the position on September 11, 1996.

On September 16, 1996, the Association filed a grievance on behalf of Mr. Koval objecting to the School District's staffing decisions. Although the School District maintained that the grievance was not arbitrable because it involved a nonprofessional position, it nonetheless participated in the grievance resolution process and submitted the grievance to arbitration. The School District contested the substantive and procedural arbitrability of the grievance and the merits of the grievance.

The arbitrator, relying upon his interpretation of the essence of the agreement, disagreed and first found the grievance procedurally and substantively arbitrable.[1] He then ruled upon the merits of the grievance finding in favor of the Association. The School District filed a petition with the trial court challenging only that portion of the arbitrator's decision finding the grievance substantively arbitrable. The trial court granted the School District's petition and vacated the arbitration award based on *Harbor Creek School District v. Harbor Creek Education Association*, 536 Pa. 574, 640 A.2d 899 (1994) and *School District of Borough of Morrisville v. Morrisville Education Association*, 165 Pa.Cmwlth. 96, 644 A.2d 252 (1994). At the time the trial court entered its order on April 21, 1998, this Court's decision is *Cranberry* had not been filed. *Cranberry* was filed on June 18, 1998. This appeal by the Association followed.[2]

The Association presents the following issue for this Court's review: Whether the trial court exceeded its scope of review and erroneously determined that a grievance regarding the filling of the athletic director position was not arbitrable.

This case centers on an interpretation of the Supreme Court's decision in *Harbor Creek* and this Court's decisions in *Morrisville* and *Cranberry*. Thus, the history of each case is necessary.

In *Harbor Creek*, the issue was whether the school district's transfer of certain duties to non-bargaining unit personnel was subject to arbitration. The school district eliminated the position of athletic director and the person who had been serving in that position was a full time elementary teacher. The school district then created a new supervisory position entitled "assistant principal of student and supplemental activities" which included the duties of the prior athletic director position. The elementary teacher voluntarily left the bargaining unit and assumed the responsibilities of the new supervisory position. The association filed a grievance arguing that the elimination of the athletic director position resulted in a transfer of bargaining unit work to a non-bargaining unit employee in violation of the collective bargaining agreement. The arbitrator sustained the grievance.

On appeal, the school district argued that the grievance procedures set forth in the collective bargaining agreement are by the express terms of the agreement, applicable only to professional employees and

1. In *Cranberry Area School District v. Cranberry Education Association*, 713 A.2d 726 (Pa. Cmwlth.1998), this Court stated that:

> The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

*Cranberry*, 713 A.2d at 729 (quoting *Leechburg Area School District v. Dale*, 492 Pa. 515, 520–21, 424 A.2d 1309, 1312–13).

2. In an appeal from the decision of an arbitrator, our review is highly circumscribed. *Cranberry*. An arbitration award must be upheld if it can, in any rational way, be derived from the collective bargaining agreement in light of the language, context, and other indicia of the parties' intention. *Id.*

that when working as an extracurricular athletic director, the elementary teacher was not serving as a teacher or any other sort of professional employee. The school district asserted that contractual grievance procedures do not apply when those who would otherwise be considered professional employees are engaged in extracurricular work. The collective bargaining agreement expressly established that its grievance procedures existed for the benefit of professional employees who are members of the bargaining unit.

This Court held that teachers who are working in extracurricular capacities are not in fact functioning as teachers and thus, they are not functioning as professional employees who can invoke the grievance procedures, such as arbitration, set forth in the collective bargaining agreement. The Supreme Court agreed and affirmed.

The Supreme Court pointed out that parties cannot be compelled to arbitrate a dispute unless they have, by contract, agreed to arbitrate the particular issue involved. The Supreme Court stated that the parties agreed on a schedule of salary supplements to be paid for the performance of extracurricular work. In addition, the collective bargaining agreement provided that qualified bargaining unit members were to be given priority in filling vacancies in the extracurricular position and that established posting procedures would be used to fill the vacancies. The grievance procedures available to professional employees defined grievance as a complaint regarding the meaning, interpretation or application of any provision of this agreement. The Supreme Court stated that although the present collective bargaining agreement described the manner in which vacancies in extracurricular positions were to be filled, and set the salary supplements applicable to those positions, it did not expressly address the school district's power to eliminate such positions.

The collective bargaining agreement did not address the question of whether employees performing extracurricular work were entitled to use the same grievance procedures that are available in connection with work performed in their professional capacities. Nevertheless, the Supreme Court stated, the collective bargaining agreement did state that all after hour assignments performed by teachers, whether paid or unpaid, except for class-related activities, are voluntary "non-teaching duties." Thus, the Supreme Court held that when performing non-teaching duties, teachers are not functioning in the professional capacities that render them professional employees for purposes of the collective bargaining agreement. The Supreme Court held further that the collective bargaining agreement contained no language that would have provided the arbitrator with a basis for deciding that the parties agreed to arbitrate disputes as to whether extracurricular duties performed by the athletic director could be assigned to non-bargaining unit personnel.

In *Morrisville*, four members of the bargaining unit were scheduled to hold coaching positions for the 1989–90 school year but later voluntarily resigned those positions due to a teachers' strike. Non-bargaining unit members filled the coaching positions. After the strike ended, the four members applied for the coaching positions and the school district denied their applications. The association filed a grievance, which the arbitrator sustained on the basis that the school district violated article 50 of the collective bargaining agreement because the school district's actions were a reprisal for the four members having participated in the strike. The trial court dismissed the school district's appeal. On appeal, this Court reversed.

Relying on *Harbor Creek*, the school district argued that the grievance procedures outlined in the collective bargaining agreement were not available to the four members because the coaching positions were non-professional positions. This Court held that it is clear under case law,

including *Harbor Creek,* that coaching positions are supplemental positions not covered by a collective bargaining agreement covering professional employees of a school district.[3]

In *Cranberry,* the school district posted a notice of a vacancy in the athletic director position to its professional staff. Harold Clark, who was a professional employee and a member of the bargaining unit, applied. Don Hall who also applied, was not, at the time of his application, employed by the school district and he was not professionally certified. The school district interviewed both applicants and offered the athletic director position to Hall. The association filed a grievance on Clark's behalf alleging that the school district violated the collective bargaining agreement by hiring Hall, a non-bargaining unit member, when a member of the bargaining unit had also applied for the position. Before the arbitrator, the school district argued that the grievance was not arbitrable because the athletic director position is categorized as non-professional. Relying on the language of the collective bargaining agreement, the arbitrator found the grievance arbitrable and sustained the grievance.

The school district appealed to the trial court, which refused to vacate the award. On appeal to this Court, the issue was whether the trial court erred as a matter of law when it sustained the arbitrator's determination that a grievance related to the school district's staffing of a non-professional, athletic director position, is substantively arbitrable. In arguing that the grievance was not arbitrable, the school district relied upon *Harbor Creek,* and asserted that the case was factually similar to *Harbor Creek* and that this Court should follow the rules of law stated therein.

This Court pointed out that the Supreme Court in *Harbor Creek* concisely concluded that elimination of a supplemental position was not arbitrable because the collective bargaining agreement did not contain language from which the arbitrator could establish his jurisdiction. This Court rejected the school district's interpretation of *Harbor Creek* that, as a matter of law, parties cannot agree to allow arbitrators to adjudicate disputes regarding non-professional positions including athletic directors. This Court stated that "though the Supreme Court noted case law which holds that disputes pertaining to extracurricular work performed by teachers is not arbitrable because it is not professional employment covered by the collective bargaining agreement, its legal analysis and conclusion is based on the 'essence test.'" *Cranberry,* 713 A.2d at 728.

This Court pointed out that the collective bargaining agreement contained a provision governing extracurricular activity

3. This Court held that *Morrisville* was controlled by *Greater Johnstown Area Vo-Tech School v. Greater Johnstown Area Vo-Tech Education Association,* 57 Pa.Cmwlth. 195, 426 A.2d 1203 (1981), *appeal dismissed,* 497 Pa. 586, 442 A.2d 692 (1982) and *In re Glover,* 137 Pa.Cmwlth. 429, 587 A.2d 25, *petition for allowance of appeal denied,* 528 Pa. 633, 598 A.2d 286 (1991), stating as follows:

> In *Greater Johnstown,* the teachers' supplemental contract was not renewed and the teachers alleged that this violated a collective bargaining provision stating that they could not be reprimanded without just cause. There appears to be no relevant distinction between the facts of that case and the facts of the present case where the teachers allege that their supplemental positions were not returned to them in violation of a [collective bargaining agreement] provision prohibiting disciplinary action against teachers for participating in a strike. *Glover* established that coaching positions are not covered by a teachers' collective bargaining agreement. In *Greater Johnstown* and *Glover,* the court held that the failure to renew a contract was not arbitrable because the collective bargaining agreement did not apply to the supplemental duties. Similarly, the collective bargaining agreement in the present case does not apply to the coaching positions and the district's denial of grievants' applications for those positions therefore is not arbitrable.

*Morrisville,* 644 A.2d at 254.

assignments which provided, in part, that a vacancy had to be posted and that if a professional person could not be secured, the school district would attempt to secure a suitable non-certified person to fill the vacancy for one year. The arbitrator interpreted this language as granting members of the bargaining unit preference over non-certified persons in acquiring extracurricular positions. In addition, the arbitrator determined that the grievant's dispute did not involve his performance of extracurricular activities, but rather, concerns the process by which the grievant, as a member of the bargaining unit, may attain an extracurricular position. This Court held that since the arbitrator's award was rationally derived from the language of the collective bargaining agreement and therefore, drew its essence from it, the arbitrator properly exercised his authority over the matter.

This Court stated further, that unlike *Harbor Creek*, the present dispute did not originate from the terms of a supplemental contract or concern the elimination of a supplemental position. The dispute also did not arise from the grievant's performance of non-professional duties such that he would be precluded from resolving the dispute by collectively agreeing to grievance proceedings. Instead, this Court stated that, the collective bargaining agreement granted a person with professional status the right of preference when competing for an extracurricular position with a non-certified person. This Court stated further that "[f]ocusing on the status of the grievant and not the position sought, leads us to conclude that the arbitrator properly exercised his authority." *Id.* at 729.

Herein, the Association's main position is that this Court's ruling in *Cranberry*, that there is no per se rule that grievances regarding the filing of supplemental positions are not arbitrable, is controlling. Thus, the Association contends, this Court should review this matter under the essence test and determine whether the arbitrator correctly determined whether the subject matter of the dispute is encompassed within the terms of the collective bargaining agreement. The Association argues that if it is, the trial court should be reversed. The Association also argues that this matter is controlled by *Cranberry* because, as in *Cranberry*, specific contract language addresses the dispute—Article VIII, Section H.[4] The Association contends that this language required the School District to fill the position with the most qualified candidate from the bargaining unit. The grievance does not arise from the grievant's performance of nonprofessional duties nor concern the elimination of a supplemental position.

4. Article VIII, Section H provides, in relevant part, as follows:

H. Supplemental positions ... shall be filled as follows:

All vacancies in supplemental positions shall be posted for a period of at least two (2) calendar weeks.

The Board will fill such vacancies with the most qualified candidate from within the bargaining unit who has made proper application within the posting period. Qualifications as stated above shall be pre-determined by the Board based upon pre-determined objective criteria which shall be specifically stated in the posting. Criteria posted for one position shall not bind the Board to such qualifications in future positions.

....

In the event two (2) or more applicants are determined by the Board to have equal qualifications, seniority with the Erie City School District will be the determining factor.

....

A committee will be established .... to develop an evaluation instrument to be utilized in the evaluation of individuals holding supplemental positions.... Such instrument may be used in the evaluation of the individual's performance in supplemental positions only. It will be separate and distinct from a professional employee's evaluation and/or rating and will have no effect on influence upon a professional employee's rating, evaluation or employment status.

All supplemental positions are for one (1) year only and the Board has the sole discretion to reappoint incumbents or to open the position for new applicants.

R.R. at 34a.

In response, the School District argues that pursuant to *Harbor Creek* and *Morrisville,* as a matter of law, arbitration provisions of professional employee collective bargaining agreements cannot cover grievances regarding supplemental non-professional employee positions. The School District contends that these cases promulgated a per se not arbitrable rule for disputes involving extracurricular activities of professional employees. The School District contends further that to the extent *Cranberry* conflicts with *Harbor Creek* and its progeny, in that it applies the essence standard of review to arbitrability decisions involving disputes regarding supplemental activities of professional employees, that case should be confined to its facts.

First, we reject the School District's contention that, pursuant to *Harbor Creek* and *Morrisville,* as a matter of law, arbitration provisions of professional employee collective bargaining agreements cannot cover grievances regarding supplemental non-professional employee positions. Pursuant to *Harbor Creek,* the arbitration of a supplemental position is not arbitrable if the collective bargaining agreement does not contain language from which the arbitrator can establish his jurisdiction. "[P]arties cannot be compelled to arbitrate a dispute unless they have, by contract agreed to arbitrate the particular issue involved." *Harbor Creek,* 536 Pa. at 578, 640 A.2d at 901. Thus, as we stated in *Cranberry,* the Supreme Court's legal analysis and conclusion in *Harbor Creek* was based on the essence test. As soon as it is determined that the issue is encompassed within the terms of the collective bargaining agreement, our review ends. *Cranberry.*

In the present case, the collective bargaining agreement defines grievance as a claim by one or more teachers of a violation, a misapplication, or a misinterpretation of the contract, or rules, regulation and/or policies which pertain to teaching conditions, teacher hours, teachers' salaries and fringe benefits which are not superseded by the agreement. Article XIII(A)(1) of the Collective Bargaining Agreement, R.R. at 49a. Thus, the parties herein have agreed that a violation of the contract is a grievance subject to arbitration. Moreover, the collective bargaining agreement at issue here does set forth the procedures for the posting and the filling of supplemental positions. As noted previously, Article VIII of the collective bargaining agreement provides:

> H. Supplemental positions as contained in Appendix 8 [5] and Appendix 9 shall be filled as follows:
>
> All vacancies in supplemental positions shall be posted for a period of at least two (2) calendar weeks.
>
> The Board will fill such vacancies with the most qualified candidate from within the bargaining unit who has made proper application within the posting period. Qualifications as stated above shall be pre-determined by the Board based upon pre-determined objective criteria which shall be specifically stated in the posting. Criteria posted for one position shall not bind the Board to such qualifications in future positions.
>
> ....
>
> In the event two (2) or more applicants are determined by the Board to have equal qualifications, seniority with the Erie City School District will be the determining factor.

R.R. at 34a.

In the present controversy, the arbitrator determined that Article VIII(H) of the collective bargaining agreement applied to the present dispute and that this provision required that any supplemental position must be offered to the most qualified applicant from the bargaining unit.

5. Appendix 8–1, entitled Coaching Salary Schedule—Senior High, contains the salary schedule for various coaching positions and included in the salary schedule is a salary for athletic director. R.R. at 34a.

Further, the arbitrator determined that Article VIII(H) required that the School District "must use predetermined objective criteria and, if applicants are determined to have equal qualifications, seniority is the determining factor." Arbitration Award, September 27, 1997, at 20, R.R. at 324a. Based upon Article VIII(H), the arbitrator found that the School District failed to comply with the "objective criteria" provision when it required that an applicant for the position of the girls' athletic director "must presently be assigned as athletic director at East High School." The arbitrator properly concluded that this criterion was improper because one applicant, and only one, satisfied the requirement and as such the criterion was "non-job related, severely restricted and unreasonable." *Id.* "An arbitration award, including the arbitrator's definition of his own jurisdiction must be affirmed so long as the award is in any *rational* way derived from the collective bargaining agreement 'viewed in light of its language, its context, and any other indicia of the parties intention ....'" (emphasis in original). *Juniata–Mifflin Counties Area Vo–Tech v. Corbin,* 547 Pa. 495, 501, 691 A.2d 924, 927 (1997) (quoting *Port Authority of Allegheny County v. Amalgamated Transit Union, Division 85,* 492 Pa. 494, 497, 424 A.2d 1299, 1300 (1981)), (citing *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977) ).

Second, we agree with the Association that, as in *Cranberry,* the grievance at issue herein does not arise from the grievant's performance of non-professional duties nor concern the elimination of a supplemental position. The matter clearly involves whether the School District violated the provisions of the collective bargaining agreement when the School District filled the athletic director position.

Accordingly, the arbitrator properly concluded that the provisions of the collective bargaining agreement provided the arbitrator with the authority to arbitrate the dispute. *Cranberry.* Therefore, the trial court erred by granting the School District's petition for vacation of arbitration award and vacating the arbitration award at issue in this case.

## *ORDER*

AND NOW, this 31st day of March, 2000, the order of the Court of Common Pleas of Erie County, at No. 13679–1997, dated April 21, 1998, is reversed.