**PENN–DELCO SCHOOL DISTRICT,**
**Appellant,**

**v.**

**PENN–DELCO EDUCATION**
**ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2000.
Decided May 10, 2000.
Reargument En Banc Denied
July 19, 2000.

**52**

Mark A. Sereni, Media, for appellant.

Lynne L. Wilson, Harrisburg, for appellee.

Before FRIEDMAN, J., KELLEY, J., and McCLOSKEY, Senior Judge.

KELLEY, Judge.

The Penn–Delco School District (District) appeals from a June 16, 1999 order of the Court of Common Pleas of Delaware County (trial court) reinstating and making final the trial court's December 29, 1998 order denying the District's petition to vacate an arbitration award. We affirm.

The District entered into a collective bargaining agreement (CBA) with the Penn–Delco Education Association (Association) on behalf of certain teachers' and other professionals employed by the District. Article 10, paragraph 8 of the CBA provides that "all extra pay positions will first be offered to bargaining unit members." Reproduced Record (R.R.) at 38a. Extra pay positions include the head football coach position, which was vacant. *Id.* at 33a. Christopher Bell, an Association member, applied for the position. However, the District hired a gentleman who was not a member of the Association.

The Association filed a grievance relative to the District's failure to hire Mr. Bell for the head football coach position. *Id.* at 59a–60a. The Association's president, Linda Cook, signed the grievance and the grievance was listed as a class action. *Id.* The grievance stated that the District violated the CBA by not hiring Mr. Bell, a bargaining unit member and experienced assistant coach. *Id.* The remedy sought was: "Cease and desist violation, hire Mr. Bell as head coach and make him whole by donating the head coaching salary of $3,781 to the PDEA Scholarship Fund." *Id.*

The District determined, based on *Harbor Creek School District v. Harbor Creek Education Association*, 536 Pa. 574, 640 A.2d 899 (1994), that the grievance was not arbitrable. *Id.* The District stated that the CBA's grievance procedure does not contain language that includes non-professional employees and since the football coach position is a non-professional position, the matter could not be deemed subject to the grievance procedure or subject to arbitration. *Id.* In addition, the District determined that: (1) the grievance, as filed, was premature, in that it was filed prior to any school board action in conjunction with this matter; and (2) the grievance form, as filed, did not contain a signature of the aggrieved employee and, as such, under the definition of grievance set forth in the CBA, the grievance could not be processed. *Id.*

The matter proceeded to arbitration where the arbitrator bifurcated the case at the request of the parties. Therefore, the initial hearing was limited to whether the grievance was procedurally and substantively arbitrable. Thus, the arbitrator decided the following two issues: (1) Whether the Association was privileged under the CBA to file a grievance seeking appointment to an extra-duty position for a bargaining unit member as a contractual right; and (2) Whether the selection of individuals by the District to fill extra-duty positions is arbitrable under the CBA.

With respect to the first issue, the arbi-

trator reviewed Article 2, Recognition,[1] and Article 7, Grievance Procedure, of the CBA and found that the Association is privileged to file a grievance on its own recognizance when the Association is seeking a policy determination. The arbitrator determined that the purpose of the grievance procedure would be thwarted if the Association could not file a policy grievance or class action. The arbitrator pointed out that the statement of purpose in the grievance procedure found in Article 7 provides that alleged grievances are to be addressed by both parties, and they are advised to seek equitable solutions. The arbitrator determined that under the District's limited interpretation of "employee," the Association would not have the right to seek an "equitable solution" of a problem if no employee were immediately affected.

The arbitrator found further that, in this case, an employee, Christopher Bell, was immediately affected by the school board's action. The arbitrator found that the testimony supported the fact that Mr. Bell was in favor of the grievance at the time it was filed and that his continuing interest in the case was not questioned during his presence at the hearing. Therefore, the arbitrator determined that the lack of Mr. Bell's signature on the grievance was more of a technical oversight than anything else and it should not become the basis for denying the stated purpose of the grievance procedure. Thus, the arbitrator determined that an Association grievance seeking a policy determination is a matter contemplated by the grievance procedure and ruled that the grievance was procedurally arbitrable.

With respect to the second issue, the arbitrator found the grievance substantively arbitrable. The arbitrator found that Article 10, paragraph 8 is part of the basic agreement and requires interpretation as it applies to selection of individuals for posted positions. The arbitrator found further that the contract language differed from the contract language found in *Harbor Creek*; therefore, the CBA permits issues over posted positions for professional employees to go through the grievance procedure to arbitration.

The arbitrator also rejected the District's arguments that a 1981 arbitration decision controlled the outcome of this case because the decision has been superseded by Article 10, paragraph 8. The arbitrator also rejected, based on the history of bargaining between the parties, the District's argument that the language of Article 10, paragraph 8 was merely a token. Finally, the arbitrator rejected the District's argument that statements made by an Association representative regarding *Harbor Creek* were relied upon by the District; therefore, the Association's claim should be denied. Accordingly, the arbitrator ruled that the grievance was substantively arbitrable.

The District then filed a petition to vacate the arbitration award with the trial court.[2] Before the trial court, the District argued that the Supreme Court's decision in *Harbor Creek* held that any dispute concerning the supplemental contract position here at issue, being the head football coach position, is deemed not to be subject

1. Article 2, Recognition, of the CBA, provides: The Board hereby recognizes the Association as the exclusive bargaining agent for those employees included in the Unit as certified by the PLRB pursuant to PERA. The term "Employee" will include and apply to all Long Term Substitute Teachers/Temporary Professional Employees/Professional Employees whose appointment is for at least one semester (90 or more days) and whose daily service is 3–3/4 hours or more per day or equivalent hours per week (18.75 hours). The Unit will not include per diem substitute teachers, coordinators, psychologists, first level supervisors, administrators, non-professional employees, and confidential employees as defined in PERA. R.R. at 15a.

2. The Association filed a motion to quash the District's petition to vacate. The trial court denied the Association's motion by order of December 29, 1998. The Association did not appeal from the trial court's order denying its motion to quash.

to the grievance procedures or arbitration clauses of the·CBA because such a position is a non-professional position. However, the trial court denied the District's petition to vacate pursuant to this Court's decision in *Cranberry Area School District v. Cranberry Education Association*, 713 A.2d 726 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, (No. 494 W.D. Alloc. Dkt.1998, filed March 5, 1999) —— Pa. ——, —— A.2d —— (1999). The trial court stated that pursuant to *Cranberry*, the language of the CBA in the case at bar provides a basis for the grievance and a basis for arbitration; this case does not involve the elimination of the position such as in *Harbor Creek*. The trial court did not address the issue of whether the arbitrator properly found that the Association was privileged under the CBA to file a grievance seeking appointment to an extra-duty position for a bargaining unit member as a contractual right nor did the trial court address the remaining arguments addressed by the arbitrator. This appeal by the District followed.

Herein, the District raises the following issues for this Court's review:

1. Whether the trial court erred in denying the District's petition to vacate and modify the arbitrator's awards where the purported grievance was not procedurally or substantively arbitrable.

2. Whether the trial court erred in refusing to vacate the awards where they do not draw their essence from the CBA, and where the arbitrator plainly exceeded his authority and rendered awards which were tantamount to advisory opinions.

3. Whether the trial court erred in refusing to follow the holding in *Harbor Creek* or the holding of a prior 1981 arbitration award on the same issue.

4. Whether the trial court erred in denying the petition to vacate where the arbitrator's admission of alleged expert testimony by counsel for the Association concerning the case was palpably improper and *prima facie* evidence of his bias, prejudice and/or failure to avoid the appearance of impropriety.

 Initially, we note that in an appeal from the decision of an arbitrator, our review is highly circumscribed. *Cranberry.* An arbitration award must be upheld if it can, in any rational way, be derived from the collective bargaining agreement in light of the language, context, and other indicia of the parties' intention. *Id.*

In *Cranberry,* this Court stated that:

> The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's ˈinterpretation is not a matter of concern to the court.

*Cranberry,* 713 A.2d at 729 (quoting *Leechburg Area School District v. Dale,* 492 Pa. 515, 520–21, 424 A.2d 1309, 1312–13 (1981)).

First, the District argues that the grievance is not procedurally arbitrable. The District contends that the arbitrator exceeded the scope of the CBA and his jurisdiction by holding that the Association must be allowed to police the CBA by filing a grievance to obtain policy determinations. The District argues that the CBA simply does not provide for a grievance to be filed by the Association whether on its own behalf or as a class action. The District also contends that there is no evidence of record concerning Mr. Bell's position on the matter. The District points out that Mr. Bell did not testify at the hearing and there was no testimony offered on his behalf by the Association that supports the arbitrator's finding that Mr. Bell was in favor of the grievance at the time it was filed. The District argues that the CBA requires that the aggrieved employee sign the grievance and in the pres-

ent matter, the president of the Association signed the grievance.[3]

Upon our review of the CBA and the arbitrator's decision, we conclude that the arbitrator's determination, that the grievance is procedurally arbitrable, drew its essence from the provisions of the CBA. The arbitrator considered the purpose of the grievance procedure, as set forth in Article 7, which provides that the purpose of the procedure "is to secure, ...., equitable solutions to alleged grievances concerning the interpretation or application of any provisions of the collective bargaining agreement." R.R. at 20a. As the arbitrator determined, the purpose of the grievance procedure would be thwarted if the Association could not file a policy grievance or class action.[4]

Moreover, as the arbitrator pointed out, in this case, there is an employee/bargaining unit member, Mr. Bell, who applied for the head football coach position and was immediately affected by the selection of a non-bargaining unit member to fill the position. Although he did not testify, Mr. Bell was present at the grievance arbitration on March 13, 1998. *Id.* at 61a–62a. Therefore, the arbitrator properly concluded that Mr. Bell had a continuing interest in the case, which interest the arbitrator found was not questioned at the grievance arbitration. In addition, as found by the arbitrator, the lack of Mr. Bell's signature on the grievance was more of a technical oversight and should not become the basis for denying the stated purpose of the grievance procedure.

Accordingly, we reject the District's contention that the grievance was not procedurally arbitrable because the president of the Association signed and filed the grievance instead of Mr. Bell.

Second, the District argues that the grievance is not substantively arbitrable. The District contends that supplemental contract positions, like that of head football coach, are not subject to grievance procedures under the CBA. The District argues that our Supreme Court's holding in *Harbor Creek* governs the facts of this case and that the holding in *Harbor Creek* was based on the simple conclusion that teachers who are working in extracurricular capacities are not in fact functioning as teachers and thus, they are not functioning as professional employees who can invoke the grievance procedures, such as arbitration, set forth in the CBA. The District argues that under *Harbor Creek*, once it is determined that the CBA provision at issue involves extracurricular duties, the inquiry ends and the dispute must be held to not be arbitrable. In addition, the District argues that the arbitrator improperly exceeded his powers because the CBA expressly excludes non-professional positions in the grievance procedure.

In response, the Association argues that the arbitrator's award in this matter closely parallels that found in *Cranberry* and that *Cranberry* is directly on point. The Association contends that the arbitrator's conclusion that the CBA provided a basis for the grievance drew its essence from

3. The District also argues that the grievance was premature as the Association did not exhaust the administrative remedies provided by the CBA before filing the grievance. Thus, the District argues, the Association filed the grievance prematurely before the School Board took action to appoint the selected candidate. However, while the District raised this argument in its level III answer to the grievance (R.R. at 60a), this argument was not raised by the District when it filed its petition to vacate and modify the arbitrator's award with the trial court. R.R. at 6a–11a. Therefore, this argument is waived. *See* Pa. R.A.P. 302 (Issues not raised in the trial court

are waived and cannot be raised for the first time on appeal.). We note further that the District also did not raise this issue in its petition for reconsideration filed with the trial court. R.R. at 366a–368a.

4. We note that although the instant grievance does not involve a group grievance, Article 7, Section V, paragraph B, provides that in those cases involving group grievances filed at level II, the Association president's signature will appear on the grievance form. R.R. at 22a.

the CBA and is consistent with this Court's decision in *Cranberry*. The Association argues that *Harbor Creek* is inapplicable.

As this case involves an interpretation of our Supreme Court's decision in *Harbor Creek* and this Court's decision in *Cranberry*, a history of each case is necessary.

In *Harbor Creek*, the issue was whether the school district's transfer of certain duties to non-bargaining unit personnel was subject to arbitration. The school district eliminated the position of athletic director and the person who had been serving in that position was a full time elementary teacher. The school district then created a new supervisory position entitled "assistant principal of student and supplemental activities" which included the duties of the prior athletic director position. The elementary teacher voluntarily left the bargaining unit and assumed the responsibilities of the new supervisory position. The association filed a grievance arguing that the elimination of the athletic director position resulted in a transfer of bargaining unit work to a non-bargaining unit employee in violation of the collective bargaining agreement. The arbitrator sustained the grievance.

On appeal, the school district argued that the grievance procedures set forth in the collective bargaining agreement are by the express terms of the agreement, applicable only to professional employees and that when working as an extracurricular athletic director, the elementary teacher was not serving as a teacher or any other sort of professional employee. The school district asserted that contractual grievance procedures do not apply when those who would otherwise be considered professional employees are engaged in extracurricular work. The collective bargaining agreement expressly established that its grievance procedures existed for the benefit of professional employees who are members of the bargaining unit.

This Court held that teachers who are working in extracurricular capacities are not in fact functioning as teachers and thus, they are not functioning as professional employees who can invoke the grievance procedures, such as arbitration, set forth in the collective bargaining agreement. The Supreme Court agreed and affirmed.

The Supreme Court pointed out that parties cannot be compelled to arbitrate a dispute unless they have, by contract, agreed to arbitrate the particular issue involved. The Supreme Court stated that the parties agreed on a schedule of salary supplements to be paid for the performance of extracurricular work. In addition, the collective bargaining agreement provided that qualified bargaining unit members were to be given priority in filling vacancies in the extracurricular position and that established posting procedures would be used to fill the vacancies. The grievance procedures available to professional employees defined grievance as a complaint regarding the meaning, interpretation or application of any provision of this agreement. The Supreme Court stated that although the present collective bargaining agreement described the manner in which vacancies in extracurricular positions were to be filled, and set the salary supplements applicable to those positions, it did not expressly address the school district's power to eliminate such positions.

The collective bargaining agreement did not address the question of whether employees performing extracurricular work were entitled to use the same grievance procedures that are available in connection with work performed in their professional capacities. Nevertheless, the Supreme Court stated, the collective bargaining agreement did state that all after hour assignments performed by teachers, whether paid or unpaid, except for class-related activities, are voluntary "non-teaching duties." Thus, the Supreme Court held that when performing non-teaching duties, teachers are not functioning in the professional capacities that

render them professional employees for purposes of the collective bargaining agreement. The Supreme Court held further that the collective bargaining agreement contained no language that would have provided the arbitrator with a basis for deciding that the parties agreed to arbitrate disputes as to whether extracurricular duties performed by the athletic director could be assigned to non-bargaining unit personnel.

In *Cranberry,* the school district posted a notice of a vacancy in the athletic director position to its professional staff. Harold Clark, who was a professional employee and a member of the bargaining unit, applied. Don Hall, who also applied, was not employed by the school district at the time of his application and was not professionally certified. The school district interviewed both applicants and offered the athletic director position to Hall. The association filed a grievance on Clark's behalf alleging that the school district violated the collective bargaining agreement by hiring Hall, a non-bargaining unit member, when a member of the bargaining unit had also applied for the position. Before the arbitrator, the school district argued that the grievance was not arbitrable because the athletic director position is categorized as non-professional. Relying on the language of the collective bargaining agreement, the arbitrator found the grievance arbitrable and sustained the grievance.

The school district appealed to the trial court, which refused to vacate the award. On appeal to this Court, the issue was whether the trial court erred as a matter of law when it sustained the arbitrator's determination that a grievance related to the school district's staffing of a non-professional, athletic director position, is substantively arbitrable. In arguing that the grievance was not arbitrable, the school district relied upon *Harbor Creek,* and asserted that the case was factually similar to *Harbor Creek* and that this Court

should follow the rules of law stated therein.

This Court pointed out that the Supreme Court in *Harbor Creek* concisely concluded that elimination of a supplemental position was not arbitrable because the collective bargaining agreement did not contain language from which the arbitrator could establish his jurisdiction. This Court rejected the school district's interpretation of *Harbor Creek* that, as a matter of law, parties cannot agree to allow arbitrators to adjudicate disputes regarding non-professional positions including athletic directors. This Court stated that "though the Supreme Court's noted case law which holds that disputes pertaining to extracurricular work performed by teachers is not arbitrable because it is not professional employment covered by the collective bargaining agreement, its legal analysis and conclusion is based on the 'essence test.'" *Cranberry,* 713 A.2d at 728.

This Court pointed out that the collective bargaining agreement contained a provision governing extracurricular activity assignments which provided, in part, that a vacancy had to be posted and that if a professional person could not be secured, the school district would attempt to secure a suitable non-certified person to fill the vacancy for one year. The arbitrator interpreted this language as granting members of the bargaining unit preference over non-certified persons in acquiring extracurricular positions. In addition, the arbitrator determined that the grievant's dispute did not involve his performance of extracurricular activities, but rather, concerns the process by which the grievant, as a member of the bargaining unit, may attain an extracurricular position. This Court held that since the arbitrator's award was rationally derived from the language of the collective bargaining agreement and therefore, drew its essence from it, the arbitrator properly exercised his authority over the matter.

This Court stated further, that unlike *Harbor Creek*, the present dispute did not originate from the terms of a supplemental contract or concern the elimination of a supplemental position. The dispute also did not arise from the grievant's performance of non-professional duties such that he would be precluded from resolving the dispute by collectively agreeing to grievance proceedings. Instead, this Court stated that, the collective bargaining agreement granted a person with professional status the right of preference when competing for an extracurricular position with a non-certified person. This Court stated further that "[f]ocusing on the status of the grievant and not the position sought, leads us to conclude that the arbitrator properly exercised his authority." *Id.* at 729.

Recently, in *The School District of The City of Erie v. Erie Education Association*, 749 A.2d 545 (Pa.Cmwlth.2000), this Court rejected the contention that, pursuant to *Harbor Creek*, as a matter of law, arbitration provisions of professional employee collective bargaining agreements cannot cover grievances regarding supplemental non-professional employee positions. We stated that

> [p]ursuant to *Harbor Creek*, the arbitration of a supplemental position is not arbitrable if the collective bargaining agreement does not contain language from which the arbitrator can establish his jurisdiction. "[P]arties cannot be compelled to arbitrate a dispute unless they have, by contract agreed to arbitrate the particular issued involved." *Harbor Creek*, 536 Pa. at 578, 640 A.2d at 901. Thus, as we stated in *Cranberry*, the Supreme Court's legal analysis and conclusion in *Harbor Creek* was based on the essence test. As soon as it is determined that the issue is encompassed within the terms of the collective bargaining agreement, our review ends. *Cranberry.*

*Erie Education Association*, 749 A.2d at 550.

Thus, we reject the District's similar contention that once it is determined that the CBA provision at issue involves extra-curricular duties, the inquiry ends and the dispute must be held not to be arbitrable. Accordingly, while the facts of this case are similar to those found in *Cranberry*, we must determine if the arbitrator properly found that the issue herein is encompassed with the terms of the CBA.

In the present case, the CBA defines grievance as "a difference between the District or its Agents and any employee concerning the interpretation or application of a provision of the collective bargaining agreement." R.R. at 21a. Thus, the parties herein have agreed that a difference as to the interpretation or application of a provision of the CBA is arbitrable. Herein, the CBA specifically provides that all extra pay positions will first be offered to bargaining unit members. *Id.* at 38a. This provision, unlike *Harbor Creek*, is not found in the terms of a supplemental contract but is included in the basic provisions of the CBA, which provisions were negotiated and bargained for by the parties. As pointed out by the arbitrator, the parties herein disagree as to how this provision is to be interpreted. The Association believes that the term "offer" requires that the position be given to a bargaining unit member who applies for the open position. The District believes that such intention would be manifested by the word "hire" instead of "offer." Thus, there is a dispute as to how this provision is to be interpreted when applied to the selection of individuals for a posted extra pay position.[5] As stated herein, a grievance is defined "a difference between the District or its Agents and any employee concerning the interpretation or application of a provision of the collective bargaining agreement." *Id.* at 21a.

---

5. We note that the position of head football coach is specifically included in Article 10 of the CBA as an extra pay position. R.R. at 33a.

■ Accordingly, the arbitrator's determination is rationally derived from the language of the CBA and therefore draws its essence from the agreement. Thus, the arbitrator properly exercised his authority and we will not disturb his decision.

■ With respect to the District's remaining issues raised in this appeal, we conclude that the arbitrator correctly determined that: (1) the 1981 decision of arbitrator Charles Halpin in *In Re Matter of the Arbitration between Penn–Delco Education Association and Penn–Delco School District* has been superseded by Article 10, paragraph 8 of the CBA; and (2) the language of Article 10, paragraph 8 was not merely a token based on the bargaining history of the parties. We conclude further that the issue of whether the arbitrator erred by admitting expert testimony of the Association's purported legal counsel has been waived by the District's failure to preserve this issue in its petition to vacate the arbitration award. *See* Pa. R.A.P. 302.[6]

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 10th day of May, 2000, the order of the Court of Common Pleas of Delaware County in the above captioned matter is affirmed.

---

6. We note further that the District did not raise this issue in its petition for reconsideration filed with the trial court. R.R. at 366a–368a.