# Housing Authority of Chester County. v. Pappas

C.P. of Chester County, No. 2012-00551

*Colleen M. Frens*, for plaintiff.
*Jeffrey P. Bryman*, for defendant.
*Donald F. Kohler, Jr.*, guardian ad litem for Kenneth J. Pappas.

TUNNELL, *J.*, October 31, 2013—

## FINDINGS OF FACT

1. On December 22, 2009, defendant executed a Lease Agreement and Addenda thereto (the "Lease") with the Housing Authority of the County of Chester, Pennsylvania (the "Housing Authority") for the premises located at 508 E. Miner Street, Apartment 7, West Chester, Pennsylvania 19382. (P-1).

2. The apartment is located in an independent living facility. The Housing Authority rented the premises to defendant in reliance upon information he provided regarding his physical needs and his ability to live independently. (P-1 at ¶1A).

3. The parties stipulated prior to trial that the Lease is valid and binding upon the parties. (Stipulation, dated 9/11/13).

Lease and Addenda

4. The Lease and addenda thereto impose obligations on defendant and set forth the Housing Authority's remedies if defendant fails to perform his obligations and violates the Lease. (P-1).

5. Paragraph 7 of the Lease, "Obligations of Tenant," sets forth various material conditions of the Lease. (P-1 at pp. 7-9).

6. The Housekeeping Standards Addendum ("Housekeeping Standards") to the Lease contains the housekeeping standards that a tenant must follow to avoid violating the Lease terms. Paragraph B of the Housekeeping Standards states that "[t]he Tenant is required to abide by the standards set forth below. Failure to abide by the Housekeeping Standards is a violation of the lease terms and can result in eviction." (P-1 at pp. 24-25).

7. Paragraph 12 of the Lease governs termination of the Lease. It states that the Housing Authority "shall not terminate or refuse to renew the Lease other than for serious or repeated violation of material terms of the Lease such as failure to make payments due under the Lease or to fulfill the Tenant obligations set forth herein, or for other good cause...." (P-1 at pp. 11-12).

8. Pursuant to paragraph 6 of the Lease, the Housing Authority is obligated to notify tenants of the specific grounds for any proposed adverse action by the Housing Authority, including proposed lease terminations. Paragraph 6.H.1 provides that in the case of termination, a notice of lease termination that complies with paragraphs 12.B and C of the Lease shall constitute adequate notice of such action. (P-1 at p. 6).

Defendant's Lease Violations

9. Defendant's Lease required him to maintain his apartment in a clean and sanitary manner. (P-1 at p.24, P-1 at Housekeeping Standards B).

10. Over the course of his tenancy, defendant repeatedly violated material terms of the Lease by consistently maintaining his apartment in an unsafe, filthy, and cluttered condition.

December 6, 2010 Inspection

11. On December 6, 2010, the Housing Authority conducted a Uniform Physical Condition Standards ("UPCS") inspection of defendant's apartment. (P-2).

12. During the inspection, the Housing Authority took photographs of defendant's apartment to document any Lease violations. (P-3).

13. The Housing Authority determined at the inspection that defendant violated the following paragraphs of the Lease:

a. Paragraphs 7.E, F, G, & I and the Housekeeping Addendum when defendant created a health and safety hazard in his apartment by allowing an excessive amount of clutter, debris, and dirt to accumulate; and,

b. Paragraph 7.O when defendant failed to report to the Housing Authority that there were conditions in his apartment that required repair and that created a health and safety issue.

(P-2).

14. After the inspection, the Housing Authority sent a letter to defendant notifying him that he failed the

inspection and had violated material terms and conditions of the Lease. (P-2).

June 13, 2011 Inspection

15. On June 13, 2011, the Housing Authority conducted a UPCS inspection of defendant's apartment and the inspector documented the findings with photographs. (P-4, 5).

16. The Housing Authority determined at the inspection that defendant violated the following paragraphs of the Lease:

a. Paragraph 7 and the Housekeeping Addendum when defendant blocked ingresses and egresses from his apartment by taping cardboard to the living room, kitchen, and bedroom windows in his apartment; and,

b. Paragraph 7 and Housekeeping Addendum when defendant created health and safety hazards in his apartment by storing car tires and car fenders in his apartment and having dirty undergarments strewn about his kitchen. (P-4).

17. After the inspection, the Housing Authority sent a letter to defendant notifying him that he failed the inspection and had violated material terms and conditions of the Lease.

(P-4).

August 1, 2011 Inspection

18. On August 1, 2011, the Housing Authority again conducted a UPCS inspection of defendant's apartment and the inspector documented the findings with photographs. (P-6).

19. The Housing Authority determined that defendant violated the following paragraphs of the Lease:

a. Paragraph 7 and the Housekeeping Addendum when defendant created health and safety hazards in his apartment by allowing an excessive amount of debris and clutter to accumulate in his apartment; and,

b. Paragraph 7 when defendant failed to report to the Housing Authority that there were conditions in his apartment that required repair and that created a health and safety issue. (P-4).

20. Thereafter, the Housing Authority began proceedings to evict defendant.

Notice to Quit

21. On August 25, 2011, the Housing Authority sent defendant a notice to wuit pursuant to paragraph 12 of the Lease. (P-8).

22. The notice to quit identified in over three pages defendant's repeated violations of the material terms and conditions of the Lease and directed defendant to vacate the premises on or before September 26, 2011. (P-8).

23. The notice to quit also detailed defendant's rights under the Lease's grievance procedure and federal regulations that govern the Housing Authority. (P-8).

24. Lastly, the notice to quit informed defendant that the Housing Authority would file a landlord and tenant complaint if he did not vacate as requested. (P-8).

25. Defendant did not exercise his rights under the grievance procedure and he did not vacate his apartment on or by September 26, 2011.

Subsequent Lease Violations

26. On November 18, 2011 and December 14, 2011, the Housing Authority again conducted inspections of defendant's apartment and determined that defendant had violated the same material terms and conditions of the Lease that he violated on December 6, 2010, June 13, 2011, and August 1, 2011. (P-9, 10).

27. On November 18, 2011, the Housing Authority determined that defendant had violated Paragraph 7 of the Lease when he created a health and safety hazard in his apartment by allowing an excessive amount of clutter to accumulate in his apartment. (P-9).

28. On December 14, 2011, the Housing Authority determined that defendant had violated material terms and conditions of the Lease again by failing a housekeeping inspection. (P-10).

29. The Housing Authority initiated a Landlord Tenant action in District Court 15-1-04, Docket Number MJ-15104-LT-0065-2011 on December 22, 2011.

30. The district court held a hearing on January 4, 2012 and awarded the Housing Authority possession, rent in arrears, and costs.

31. Defendant appealed the district court's decision and the Housing Authority initiated the present action.

## DISCUSSION

A bench trial in this eviction action was held on October 24, 2013. At trial, plaintiff introduced requisite and sufficient evidence of its claim. It did so through Housing Authority employee, John Kostyal, Director of Public Housing at the Housing Authority, who was

competent to testify about the facts and documents central to this case. Mr. Kostyal has served as the director of the Housing Authority since 2005 and previously worked in public housing in Allentown, Pennsylvania. He testified that he is responsible for supervising the Housing Authority staff and consults with that staff on a routine basis. Mr. Kostyal also serves as the custodian of records for the Housing Authority. He testified that he is familiar with the Housing Authority inspection reports and related documents that are relevant to the action. He testified that such documents were created in the regular course of the Housing Authority's business.

Mr. Kostyal also testified at length about the condition of defendant's apartment at the time of the various inspections. According to Mr. Kostyal, defendant's premises is an independent living apartment within an independent living facility. He testified that minimum housekeeping standards are required of both tenants and the Housing Authority in accordance with federal regulations. The Housing Authority, in turn, must ensure that tenants meet these standards. Furthermore, the Lease's housekeeping addenda and paragraph 7 also set forth standards regarding the condition of tenant's residences. Mr. Kostyal then testified about the multiple housekeeping inspections of defendant's apartment that revealed material and repeated violations of the Lease. Through Mr. Kostyal, plaintiff offered into evidence well over one hundred photographs of defendant's apartment at the time of the inspections and the photographs were admitted without objection. (P-3, 5, 7, 10, 11). The history of the inspections follow.

On December 6, 2010, the Housing Authority conducted an inspection of defendant's apartment. (P-

2). The inspection report recorded violations of the most serious nature, level L-3. (P-2). Mr. Kostyal testified that the inspection report and photographs taken of defendant's apartment during the inspection noted a kitchen stove with missing grates, debris covering the top of the stove and other garbage and debris strewn throughout the apartment. The inspection report also identified an inoperable GFI outlet. Mr. Kostyal testified that the Lease requires that a tenant who has a condition in his apartment that requires repair must notify the Housing Authority of the condition. The Housing Authority has an "800" number, with a 24-hour answering service, that tenants may call with problems or they can complete a work order. Defendant presented no evidence that he took advantage of any of those reporting channels.

On June 13, 2011, the Housing Authority conducted another inspection of defendant's apartment and again photos were taken of the apartment during the inspection. The inspection once again revealed various housekeeping violations, including cardboard taped to living room, kitchen and bedroom windows which blocked the egresses, car tires and fenders in the apartment and dirty undergarments in the kitchen. (P-4). On August 1, 2011, the Housing Authority conducted yet another inspection of defendant's apartment. At that inspection, there were two L-3 violations — an inoperable GFI plug and a non-functioning kitchen exhaust fan. (P-6) Both items, according to Mr. Kostyal's testimony, should have been reported to the Housing Authority under the terms of the Lease.

On August 25, 2012, the Housing Authority sent defendant a notice to quit which outlined his multiple and repeated Lease violations and demanded that he vacate

the premises on or before September 26, 2011. (P-8). Mr. Kostyal testified that defendant did not vacate by September 26, 2011, but continued to occupy the apartment and violate the terms of his Lease. Inspections conducted on November 18, 2011 and December 14, 2011 revealed the same type of violations that were observed in the previous inspections. (P-9-11). During these inspections, the inspectors found debris, trash and clutter throughout the apartment, including the kitchen, and appliances that required servicing. (P-9-11).

At trial, defendant did not challenge the findings of the inspectors or the observations contained in their reports. Rather, defendant argued that plaintiff failed to wait the requisite time before filing its eviction action and as a result the court lacked jurisdiction over the action. In the alternative, defendant argued that the Lease violations, which defendant does not dispute, were not significant enough to be considered "material" breaches warranting termination. Given the evidence presented at trial and the plain language of the Lease, the court finds both of these arguments to be without merit.

A. The August 25, 2011 Notice to Quit Is Valid.

Pursuant to Section 501 of the Pennsylvania Landlord and Tenant Act, a landlord who wishes to evict a tenant must first give written notice to the tenant of their intention to do so. 68 P.S. §250.501. A landlord may only take such action in the following circumstances: "(1) Upon the termination of a term of the tenant, (2) or upon forfeiture of the lease for breach of its conditions, (3) or upon the failure of the tenant, upon demand, to satisfy any rent reserved and due. 68 P.S. §250.501(a). The notice to quit must also specify the date by which the tenant must vacate the premises. If the Lease is for a term of more than one

year, the notice shall specify that the tenant must vacate within 30 days of the date of service of the notice. 68 P.S. §250.501(b).

In addition, pursuant to federal law governing public housing authority leases, the Housing Authority prior to a lease termination must provide notice that is (1) written, (2) states the specific reasons for the termination, (3) informs the tenant of the tenant's right to make a reply, and (4) informs the tenant of their rights under the Housing Authority's Grievance Procedure. 24 C.F.R. §966.4(1)(3). Section 966.4 allows the Housing Authority to combine the notices required by state and federal law. It provides that a "notice to vacate which is required by State or local law may be combined with, or run concurrently with, a notice of lease termination under paragraph (1)(3)(i) of this section." 24 C.F.R. §966.4(1)(3)(iii). Paragraphs 12.B & C in the Lease incorporate these state and federal requirements and require the Housing Authority to notify the tenant that the Housing Authority will file a landlord tenant complaint if the tenant does not vacate by the date specified in the notice to quit. (P-1 at p. 11).

Defendant acknowledged in his pre-trial filings that the required state and federal notice periods can run concurrently and that the August 25, 2011 Notice was issued by the Housing Authority. (*See* defendant's pre-trial memorandum and answer and new matter). Although the challenge was never raised in defendant's answer and new matter, defendant contended at trial that a Housing Authority letter dated December 12, 2011 (D-13) was the controlling notice to quit. According to defendant, the Housing Authority failed to wait the requisite period of time (30 days) before it filed its eviction action on December 22, 2011.

Defendant argued that by issuing both the August 25th and the December 12th letters, the Housing Authority intended the two notices (federal and state) to run consecutively. Defendant contends that a reference in the December 12th letter to a "previous letter" notifying defendant of the Housing Authority's intent to terminate the lease necessarily referred to the August 25th letter and thus demonstrates on its face that the two notice periods ran consecutively. Other than argument and the letters themselves, defendant offered no evidence to support his contention.

The Housing Authority's director, Mr. Kostyal, testified, however, that that the "letter" referenced in the December 12th letter was not the August 25th letter. Mr. Kostyal testified that the December 12th letter referred to other correspondence about rent issues that the Housing Authority issued to various tenants. Although the letters referred to by Mr. Kostyal were not offered into evidence, the court finds Mr. Kostyal's testimony persuasive. Defendant failed to offer any evidence to contradict this testimony. Moreover, the court's own reading of the two disputed letters leads the court to conclude that the Housing Authority issued the two letters independently of one another and the letters were not meant to serve as consecutive notices of the Housing Authority's intent to terminate the Lease.

The August 25th letter is four pages in length and lists three different sections of the Lease (paragraphs 3, 5 and 7) that the Housing Authority deemed defendant to have violated. (P-8). As for one of those sections, "7. Obligations of Tenant," the letter further delineates three separate subparts that defendant violated. (*Id.*) All of the violations related to the safety and physical condition of

his apartment — the violations which form the basis of the Housing Authority's present action. With regard to paragraph 3 "Rent," the letter cites eight prior eviction notices issued by the Housing Authority in the twelve months prior to the letter. (*Id.*).

In stark contrast, the December 12th letter is one page. It lists defendant's violation as only the failure to pay rent in the amount of $218.00 plus late charges. (D-13) There is no mention of housekeeping violations or other safety concerns, which dominated the August letter. Rather, it states that the previous letter issued by the Housing Authority (the language defendant basis his argument upon) was "for the above lease violations" — which by the letter's plain language is the failure to pay rent. Therefore, the court finds the Housing Authority's notice to quit to be valid and the court's jurisdiction over this matter proper.

B. Defendant Committed Serious and Repeated Violations of Material Terms of the Lease and the Housekeeping Addendum.

Pennsylvania courts apply general principles of contract law to residential leases and traditional contract remedies are available to both the landlord and the tenant. *Bayne v. Smith*, 965 A.2d 265, 266 (Pa. Super. 2009) (citing *Pugh v. Holmes*, 384 A.2d 1234, 1240 (Pa. Super. 1978), *aff'd*, 405 A.2d 897 (Pa. 1979)). In Pennsylvania, to maintain a cause of action for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006) (citing *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002). A breach of contract is the failure, without justification, to perform all or any

part of what is promised in a contract. *Ringgold Sch. Dist. v. Abramski*, 426 A.2d 707, 711 (Pa. Commw. 1981) (quoting Restatement of Contracts §314). The purpose of damages in a breach of contract action is to return the parties to the position they would have been in but for the breach. *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. 2003) (citing *Birth Ctr. v. St. Paul Co., Inc.*, 787 A.2d 376 (Pa. 2001). Here, the parties stipulated that the Lease is a valid and binding contract. (*See* stipulation, dtd. September 11, 2013.) The court, therefore, needs only to focus on whether defendant breached the contract to which he was bound and what damages, if any are appropriate.

The Lease and addenda thereto impose specific obligations on tenants. The Lease makes clear that if a tenant fails to perform those obligations, he/she violates the Lease. That being said, paragraph 12 of the Lease provides that the Housing Authority "shall not terminate or refuse to renew the Lease other than for serious or repeated violation of material terms of the Lease such as failure to make payments due under the Lease or to fulfill the Tenant obligations set forth herein, or for other good cause...." (P-1 at pp. 11-12.) Paragraph 12 also incorporates the grounds for termination under the federal law that governing public Housing Authority leases. *See* 24 C.F.R. §966.4. Federal law specifically includes "failure to fulfill household obligations" as grounds for lease termination. 24 C.F.R. 966.4(1)(2)(i)(B).

The evidence at trial demonstrated that defendant breached the Lease and Housekeeping Addendum by committing repeated and serious violations of the material terms and conditions of the Lease. Paragraph 7 of the Lease imposes specific obligations upon defendant and clearly states that the conditions required

of defendant are "material conditions of the Lease." (P-1 at p. 7). The testimonial and substantial photographic evidence presented at trial demonstrated that defendant violated paragraph 7, specifically subparts E, F, G, I, and O, on December 6, 2010, June 13, 2010, August 1, 2011, November 18, 2011, and December 14, 2011 by maintaining his apartment and appliances therein in a unclean, unsafe and cluttered condition. The material violations committed by defendant included housing car parts in his apartment, covering apartment windows with cardboard, and failing to report to the Housing Authority conditions in his apartment that required maintenance. These repeated violations of paragraph 7 of the Lease constitute a valid basis for termination of the Lease.

Additionally, the Housekeeping Addendum, which defendant agreed he is bound by, is an integral part of the Lease and it too states that failure to abide by those standards is a violation of the Lease and "can result in eviction." (P-1 at pp. 24-25). Defendant likewise violated the Housekeeping addendum on December 6, 2010, June 13, 2010, August 1, 2011, November 18, 2011, and December 14, 2011 by maintaining his apartment in an unclean and unsafe manner as described above. Consequently, these repeated violations of the Housekeeping addendum gave the Housing Authority additional grounds for termination. *See Alleghany Co. Housing Auth. v. Johnson*, 908 A.2d 336 (Pa. Super. 2006)(finding serious and material violations of housing authority leases, such as failure to fulfill tenant obligations, to be grounds for eviction).

Defendant does not deny that his apartment was kept in the condition photographed by plaintiff during the various inspections. Rather, defendant argued at trial that the Housing Authority did not establish that the violations

were material and warranted the Lease termination. According to defendant, although his apartment may not have been the neatest, the alleged violations were not serious and should have been excused.

In support of his position, defendant relied upon requests for admissions that he served upon the Housing Authority during the discovery phase of this litigation. (D-3). Defendant served the Housing Authority with requests for admissions in August 2012, which plaintiff did not respond to within the time permitted or within the time period agreed to by counsel. Defendant asserted that the facts deemed admitted by plaintiff as a result of its failure to timely answer the requests support his contention that there was no material breach of the Lease. Plaintiff did answer the requests for admissions in December, 2012 and argued at trial that the requests should not be deemed admitted facts since the Housing Authority eventually did respond to the requests and referenced the footnote in *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 160 (Pa. 2009) discussing such instances. The court need not make a formal determination regarding plaintiff's late response, because even if it considers defendant's requests for admission as "deemed facts," such facts do not support a finding that there was no material breach.

Defendant served eight requests for admissions. Request nos. 1 (rent) and 6 (drug activity and safety of others) are not relevant to the trial issues. Defendant's request for admission no. 6 apparently was meant to track the language in paragraph 12 of the Lease that allows termination of the Lease for "violation of any laws pertaining to drug related criminal activity and other criminal activity which threatens safety or peaceful occupancy by other Tenants." (P-11 at p. 11). The Housing Authority did not pursue its

claim for unpaid rents nor did it assert that defendant had committed any acts related to drug activity or other such activity affecting the safety of others. These requests, therefore, are not relevant to the present action.

Request nos. 2-5 and 8 relate to defendant's physical condition. As an initial matter, prior to trial the court, by order dated October 1, 2013, granted plaintiff's motion in limine and precluded evidence at trial of defendant's alleged physical disability. Nonetheless, the court permitted defendant to introduce his requests for admission into evidence, some of which tangentially refer to defendant's physical condition. Like the others, these requests do not support defendant's argument that there was no breach or that any breach should have been excused.

Defendant's position at trial is inconsistent with the averments in his answer and new matter and with the representations he made to the Housing Authority when he executed the Lease and affirmed that he was capable of living in its independent living facility, in spite of having kidney issues. Moreover, there was no evidence offered during the case by defendant that he had requested an accommodation that was then denied by the Housing Authority — a necessary showing for any such defense. *See Lebanon County. Housing Auth. v. Landek*, 967 A.2d 1009 (Pa. Super. 2009)(stating tenant's request for reasonable accommodation necessary to establish reasonable accommodation defense).

The remaining request no. 7 deals with defendant's suggestion that he, like other non-Housing Authority residents of apartments in Chester County, does not need to keep his residence in any particular condition. Request no. 7 states that as long as they "obey the law

and do not damage the residences in which they reside... residents of the [Housing Authority] facility have rights similar to the rights of persons that occupy apartments in this County...including the right whether to be exquisitely neat housekeepers...." (D-13). Even if admitted to, this statement has nothing to do with and, in fact, ignores the contract entered into between the parties and which defendant agrees bound him to certain terms and conditions. Whether the parties admit that defendant has the same housekeeping "rights" as any other tenants in Chester County, the fact remains that defendant entered into a contract with the Housing Authority that imposed upon him certain additional, and perhaps in defendant's view more burdensome, housekeeping obligations, conditions and standards. These obligations are contractual in nature and defendant accepted the Housing Authority's terms and conditions in exchange for the housing he received. The housekeeping obligations that non-contracting residents may have (or not have) has no bearing on the present case. This argument simply fails to dispose of the overwhelming evidence of defendant's breach of the Lease.

C. The Housing Authority is Not Entitled to Attorneys' Fees under the Lease.

In its request for relief, the Housing Authority seeks costs and fees from defendant in connection with this eviction action, including attorneys' fees. The Housing Authority points to paragraphs 3 and 12 of the Lease as support for its request. The court finds that although an award of costs is appropriate, attorneys' fees are not warranted under the Lease given the present circumstances.

The plain language of paragraph 3 makes it clear that the authorization of attorneys' fees specified therein

relates to actions involving rent collection, which is not the present action. Paragraph 3 of the Lease is entitled "3. PAYMENTS DUE UNDER THE LEASE" and the first paragraph there under is entitled "Rent." (P-1 at p.2). The "rent" paragraph describes in detail how rent is to be paid and what might occur if the rent obligation is not met. In the middle of the paragraph, the Lease provides that the "[t]enant shall be liable for all legal fees if judgment is in favor of the Authority and for collection of fees if account is turned over to a collection agency for collection of the vacated tenant delinquent account." It then goes on to speak further about the rent obligations of tenant. This is not a rent collection action, nor a termination proceeding based upon unpaid rent. Therefore, this provision does not support the Housing Authority's contention that it is entitled to attorneys' fees in this case. The other Lease provision that mentions attorneys' fees, and to which the Housing Authority directs the courts' attention, is Paragraph 12 dealing with Lease terminations. (P-1 at p. 11). Paragraph 12 provides that the required notice of termination must state that if a landlord tenant complaint is filed by the Housing Authority after a tenant fails to quit the premises, the tenant "may be required to pay the costs of court and attorneys' fees if the Tenant loses the case." Unlike paragraph 3, there is no language here *requiring* the imposition of fees. The court finds, therefore, that in the absence of a contractual provision mandating the imposition of attorneys' fees, such relief will not be granted.

## Conclusions of Law

1. Plaintiff and defendant entered into a valid Lease that was binding upon the parties.

2. Paragraph 12 of the Lease states that the Housing Authority "shall not terminate or refuse to renew the Lease other than for serious or repeated violation of material terms of the Lease such as failure to make payments due under the Lease or to fulfill the Tenant obligations set forth herein, or for other good cause...." (Lease, pp. 11-12.)

3. Paragraph 7 of the Lease imposes obligations on tenant and states material conditions of the Lease.

4. Defendant committed serious and repeated violations of paragraph 7 of the Lease on December 6, 2010, June 13, 2011, August 1, 2011, November 18, 2011, and December 14, 2011.

5. On August 25, 2011, the Housing Authority issued a notice to quit to defendant in accordance with paragraph 12 of the Lease.

6. The notice to quit complied with the Lease, the Landlord and Tenant Act, 68 P.S. §250.501, and the federal laws that govern Housing Authority leases.

7. As a result of defendant's material breach, plaintiff is entitled to judgment in its favor and against defendant for possession of the premises and costs and fees, excluding attorneys' fees.

An appropriate order follows.

### ORDER

And now, this 31st day of October, 2013, following trial by the court sitting without a jury on October 24, 2013, the court finds in favor of plaintiff, Housing Authority of Chester County, and against defendant, Kenneth J. Pappas, for possession of the premises and for the costs and fees incurred in this action, excluding attorneys' fees.